**UNITED STATES of America, Appellee,**

v.

**Morgan Dwight BROWN, Appellant.**

**No. 85–5504.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 8, 1985.

Decided April 8, 1986.

---

Carl A. Tibbetts, Roanoke, Va., for appellant.

Jerry W. Kilgore, Third Year Law Student (Thomas J. Bondurant, Asst. U.S. Atty., John P. Alderman, U.S. Atty., Roanoke, Va., on brief), for appellee.

Before WIDENER and PHILLIPS, Circuit Judges, and HILTON, District Judge, Eastern District of Virginia, sitting by designation.

WIDENER, Circuit Judge:

Morgan Dwight Brown was convicted after a jury trial of possession of an unregistered firearm and of a silencer in violation of 26 U.S.C. § 5861 (1982). On appeal, Brown contends that the district court erred in admitting certain evidence seized during a warrantless search of Brown's automobile subsequent to Brown's arrest for driving while intoxicated. We affirm.

On the night of April 29, 1984, Brown was driving his automobile in the city of South Boston, Virginia. Passengers in the car with Brown included his brother, Charlie Mack Brown, a friend, Morris Hamlett, and a casual acquaintance, Stella Louise Waller. All four had been drinking beer that evening, and there were open beer cans in the car.

Shortly after 11 p.m. that evening, Officer Richard Loftis of the South Boston Police Department observed Brown's car weaving down the highway. After Brown's car nearly struck a parked car, Loftis signaled Brown to stop. Brown then pulled his car off the street into a small parking lot that serviced some nearby businesses and apartments. Upon investigation, Loftis observed that Brown's eyes were red, and that he had a strong odor of alcohol on his breath. A field breath test confirmed Loftis' suspicion that Brown was intoxicated, whereupon Loftis arrested Brown for driving under the influence of alcohol.[1]

---

1. Later testing revealed that Brown's blood alcohol content was .22, which is over twice the

After determining that everyone in Brown's car had been drinking, Loftis informed Brown that he was going to impound Brown's car. Loftis asked Brown whether he would prefer having a police officer drive the car to the police station, or whether he would prefer to have the vehicle towed there. Loftis testified that Brown responded at first that he did not allow anyone to drive his car, but then gave consent to have the car driven when told that a tow truck would be called. At this point, the evidence is in dispute. Brown testified during the suppression hearing that he told Loftis that his girlfriend lived in an apartment over one of the businesses adjoining the parking lot in which Brown had been arrested. Brown further testified that he requested that Loftis allow him to go upstairs and get his girlfriend, presumably to take custody of Brown's car. Loftis, on the other hand, testified that although Brown did inform him of the girlfriend's alleged proximity, Brown never asked Loftis for permission to contact his girlfriend, nor did he request that Loftis do so. Loftis further testified that Brown agreed to Loftis' request to have an officer drive the car to the police station, after being presented with the option of having a tow truck tow the car to the station instead. It is clear from the record that Brown's girlfriend never arrived on the scene.

Upon driving Brown's car to the South Boston police station, and pursuant to a nondiscretionary police department policy,[2] Loftis and another officer conducted an inventory search of Brown's car. Loftis testified that the purpose of this search was to protect the police department from subsequent claims for any items that might be lost from the car while the car was in police custody. Loftis further testified that he did not expect to find any evidence of other crimes as a result of this search because he did not at that time have any indication that the defendant was involved in any other sort of crime besides drunk driving.

During this search, the officers inventoried numerous items and reported all of them on the department's inventory report form. While searching the front of the car, Loftis discovered a short-barreled rifle with an attached silencer under the driver's side of the front seat. Brown was subsequently indicted for possession of an unregistered firearm and silencer in violation of 26 U.S.C. § 5861.

Prior to his trial on these charges, Brown moved to suppress all evidence that the police had obtained, directly and indirectly, as a result of the inventory search. After a hearing on the motion, the district court denied Brown's motion, stating:

As the police had legal custody of the vehicle, were acting pursuant to standard policy, and were not searching for any incriminating evidence, the inventory search of the defendant's car was valid under the *[South Dakota v.] Opperman,* [428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)] requirements.

On appeal, Brown contends that the district court erred in denying his motion to suppress. We disagree.

■ Inventory searches constitute a well-established exception to the warrant requirement of the fourth amendment. See *Illinois v. Lafayette,* 462 U.S. 640, 643, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65 (1983). For an inventory search to be valid, the vehicle searched should first be in the valid custody of the law enforcement officers

level required for conviction of driving under the influence of alcohol in Virginia. Brown was subsequently convicted in local court of driving under the influence of alcohol.

**2.** The South Boston Police Department's official policy for the inventory of impounded vehicles is set forth in a memorandum from the chief of police dated July 17, 1981. The memorandum provides:

It is the policy of the South Boston Police Department whenever an Officer has to take into custody a subject with a vehicle and it becomes necessary to tow or store the vehicle the Officer shall inventory vehicle with the form supplied by this Department and file with the arrest report.

conducting the inventory. See *South Dakota v. Opperman*, 428 U.S. 364, 374, 96 S.Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976). If the vehicle is in lawful custody, the police may inventory the vehicle, if such inventories are routine and conducted pursuant to standard police procedures, so long as the purpose of the inventory is to secure the car or its contents and not to gather incriminating evidence against the owner. *Id.* at 375–76, 96 S.Ct. at 3100.[3]

■ Brown contends that his car was not in lawful custody because the car was parked in a private parking lot and there was no need to impound the vehicle because Brown's friends or relatives could have taken custody of it. The question before us, however, is not whether there was a need for the police to impound Brown's vehicle but, rather, whether the police officer's decision to impound was reasonable under the circumstances. See *Opperman* at 372–74, 96 S.Ct. at 3098–99; *Cabbler v. Superintendent, Va. State Penitentiary*, 528 F.2d 1142, 1145–46 (4th Cir.1975), *cert. denied*, 429 U.S. 817, 97 S.Ct. 50 L.Ed.2d 77 (1976). We conclude that it was.

■ Brown first contends that the impoundment was unlawful because Loftis could have left the car in the custody of the other passengers in Brown's car at the time of Brown's arrest. The other passengers in Brown's car at the time of his arrest were admittedly all drinking on the night in question. Regardless of whether they had actually imbibed enough to incapacitate their driving abilities, a difficult question at best, having observed that they had been drinking, the officer's decision not to leave the car in their custody was not only reasonable, it may well have been the only prudent decision to make in the circumstances.

Brown also contends that the impoundment was unlawful because Loftis could have left the car in the custody of Brown's girlfriend, who apparently lived above the insurance agency in whose parking lot Brown's car was located. The police could have done so. That they did not, however, does not render their impoundment of Brown's car unreasonable. See *Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983) (existence of less intrusive means of conducting search or seizure does not render search or seizure unreasonable so long as circumstances indicate that officers' actions were reasonable). There was conflicting evidence as to whether Brown even requested that the police get in touch with his girlfriend. Moreover, Brown had previously given the police apparently inaccurate answers as to his actual residence, thereby calling into reasonable question any representations that Brown might have made concerning his girlfriend's whereabouts and her availability to take custody of his car, if, in fact, he ever made such representations to the arresting officers.

Finally, although the parking lot in which Brown's car was located was in part for the convenience of certain apartment dwellers, it was also for the business convenience of certain adjoining businesses. In these circumstances, the police officers could reasonably have concluded that Brown's vehicle could have presented a nuisance should it have remained parked where it was until the next day or longer.

For the reasons set forth above, we are of opinion that the police officer in this case could reasonably have impounded Brown's vehicle either because there was no known individual immediately available to take custody of the car, or because the car could have constituted a nuisance in the area in which it was parked. See *Cabbler v. Superintendent, Va. Penitentiary*, 528

---

**3.** Brown contends that as an additional requirement for a valid inventory search, the items inventoried must be in plain view. Neither *Opperman* nor subsequent caselaw supports this contention. See *South Dakota v. Opperman*, 428 U.S. 364, 377 n. 2, 96 S.Ct. 3092, 3101 n. 2, 49 L.Ed.2d 1000 (1976) (Powell, J., concurring); *United States v. Edwards*, 577 F.2d 883, 894 n. 23 (5th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978); see also 2 W. LA-FAVE, SEARCH & SEIZURE § 7.4, at 575–76 (1978).

F.2d 1142, 1143, 1146 (4th Cir.1975) (holding that police do not violate fourth amendment when they impound vehicle to protect it or to remove a nuisance after arresting driver away from home if driver has no means immediately available for safekeeping of vehicle), *cert. denied,* 429 U.S. 817, 97 S.Ct. 60, 50 L.Ed.2d 77 (1976). Therefore, we are of opinion that the police were in lawful custody of Brown's car at the time of their inventory of its contents.

█ Having concluded that the police were in lawful custody of Brown's car, we also conclude that their subsequent inventory of its contents met the other requirements for a valid inventory search of an impounded vehicle set forth by the Court in *Opperman.* The South Boston Police Department had established a standard nondiscretionary policy of conducting an inventory of the contents of every vehicle that the police department impounded.[4] Moreover, the evidence in the record is overwhelming that the police did not have an investigatory motive for their inventory of Brown's car.

In summary, we hold that the police in this case did not violate the fourth amendment when they impounded Brown's car and inventoried its contents. Consequently, we hold that the district court did not err when it denied Brown's motion to suppress evidence relating to the inventory search on fourth amendment grounds.

Accordingly, the judgment of conviction is

AFFIRMED.