**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4862

JERRY JEFFERSON SEXTON, a/k/a Jim
Smith, a/k/a George Thompson,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4863

COLEEN ALLIEFIER SEXTON, a/k/a
Colleen Sexton, a/k/a Lynn
Carraway,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Charlottesville.
Samuel G. Wilson, Chief District Judge.
(CR-97-9)

Argued: March 1, 1999

Decided: May 10, 1999

Before NIEMEYER and KING, Circuit Judges, and
LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** William Thomas Robey, III, Buena Vista, Virginia, for Appellant Jerry Sexton; Robert F. Rider, Roanoke, Virginia, for Appellant Coleen Sexton. Jean Barrett Hudson, Assistant United States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Charlottesville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jerry and Coleen Sexton appeal their convictions by a jury in the Western District of Virginia for various drug and firearm offenses. They contend on appeal that the district court erred in denying their motions to suppress certain evidence. Finding no reversible error, we affirm each of the convictions.

I.

On March 30, 1996, at approximately 11:30 p.m., Virginia State Police Trooper David Albert received a dispatch to "be on the lookout"[1] for a 1993 Winnebago-type vehicle motor home ("the Winnebago" or "the motor home"), described as white with red and blue stripes, bearing South Carolina plates LMC-542.[2] The dispatcher advised Trooper Albert that the BOLO had been issued by the FBI, and that the occu-

_____

[1] A "be on the lookout" teletype or message is called, among other things, a "BOLO" broadcast. We will refer to it here as "the BOLO."
[2] There were in fact, two BOLOs-- the second BOLO was a brief update indicating that the suspects had exchanged their Toyota for a Winnebago-type vehicle.

2

pants of the motor home, possibly three subjects-- one white married couple with the last name of Sexton and another man-- were wanted and were "extremely armed and dangerous . . . with excessive weapons." The Sextons were reported by the BOLO to be using the aliases of George Allen Thompson and Lynn Carraway. The BOLO also indicated that they were suspects in homicides in Delaware and possibly in Virginia. The BOLO stated: "Warrants issued by US District Court in Delaware with warrants on file at the US Marshall's [sic] office in Wilmington, DE." It did not otherwise specifically identify the subjects of the warrants.

At approximately 6 a.m. the following morning, March 31, 1996, Trooper Albert observed a motor home that matched the description in the BOLO parked in the lot of a Golden Corral restaurant located in Rockbridge County, Virginia. When back-up forces arrived and began to barricade the entrance to the Golden Corral parking lot, the Winnebago attempted to pull out of the parking lot. Trooper Albert thereupon initiated a felony traffic stop.[3]

Trooper Albert ordered the individuals occupying the driver and passenger seats, later identified as defendants Jerry and Coleen Sexton, out of the vehicle. After the Sextons were both handcuffed and secured outside the Winnebago, Trooper Albert and two other officers entered to search for the third suspect referred to in the BOLO. No other person was found inside.

As one of the officers exited the motor home, he asked the Sextons if there were any weapons inside, and they responded affirmatively. One of the troopers then located and removed weapons, specifically a 9mm pistol and a .380 caliber pistol, from locations indicated by the Sextons.

Upon being asked for identification, Ms. Sexton presented the officers with a false South Carolina driver's license bearing her photo-

_____

[3] According to Trooper Albert, a felony traffic stop is a high-risk stop that is used when confronting individuals known to be armed and dangerous. The car is stopped at gunpoint; a PA system is used, and officers do not approach the vehicle until the occupants are removed, handcuffed, and under control.

3

graph and the name Lynn Carraway. Mr. Sexton's South Carolina driver's license, which was also false, bore his photograph and the name George Thompson. The couple stated that they were Lynn Carraway and George Thompson, and that the police officers had made a "tremendous mistake." Trooper Albert immediately took the Sextons into custody, after informing them that the names they were using were known aliases for subjects known as Jerry and Coleen Sexton, and that there were warrants on file for their arrests.

The Sextons were thereafter taken separately to the Rockbridge County Regional Jail, about 500 yards from the Golden Corral restaurant, at approximately 6:40 a.m. The Winnebago was also initially taken to the jail parking lot, where it was secured and locked. Meanwhile, Trooper Albert searched the area surrounding the Golden Corral for the third suspect for about forty-five minutes, to no avail.

Sometime between 8:30 a.m. and 8:45 a.m. at the jail, Officer Jane Clark searched Ms. Sexton for weapons and contraband pursuant to the jail's policy. During that search, Officer Clark discovered cocaine in Ms. Sexton's purse. At approximately 10:30 a.m., an arrest warrant was obtained for Ms. Sexton, based on possession of the cocaine that had been found in her purse. Unknown to Officer Clark at the time of the search, it had been discovered at about 8:00 a.m. that, contrary to the BOLO, there were no outstanding warrants for Ms. Sexton. Significantly, the district court found that at the time Officer Clark searched Ms. Sexton, she had no knowledge that there were, in fact, no outstanding warrants for Ms. Sexton.

Trooper Albert was not aware of the developments relating to Ms. Sexton until later that morning, because after giving up his initial search for the third suspect, he returned to the Rockbridge County jail, and with other police officers, took the motor home -- which had already been secured and locked up at the jail -- back to the Golden Corral parking lot. The return of the Winnebago to the Golden Corral was a further attempt to locate the third suspect, whom they hoped would eventually return to the motor home. At around 8:00 a.m., while Albert and the other officers were waiting at the Golden Corral inside the Winnebago, they decided to make an inventory of the contents of it. At this point, both Sextons were at the jail under arrest based on the BOLO and the presentation of false identification to the

4

officers. Of significance, in the inventory search of the Winnebago, the officers found -- among other things -- more than 500 grams of cocaine, a pen gun,**4** cell phones, police scanners and pagers.

The Sextons were indicted on multiple drug and firearm charges. Each moved to suppress all the evidence that had been obtained as a result of the stop of the motor home and their subsequent arrests. After a hearing concluding on May 12, 1997, the district court found that the officers properly stopped the Winnebago and had probable cause to arrest each of the defendants, and thus denied their motions to suppress. A three-day jury trial promptly followed. Ms. Sexton was found guilty of six drug and firearm offenses; Mr. Sexton was found guilty of the same six offenses, as well as two additional firearm offenses.**5**

On October 15, 1997, the district court sentenced Coleen and Jerry Sexton to terms of imprisonment of 123 months and 200 months, respectively. The defendants timely filed notices of appeal on October 24, 1997.

The issues raised on appeal relate to the denial of the motions to suppress, premised on claims that the arrest of Ms. Sexton was improper, as were the searches of Ms. Sexton and the Winnebago.

_____

**4** As defined by the provisions of 26 U.S.C. § 5845(a)(5) and (e), a pen gun -- a single shot weapon that looks like a fountain pen -- is a firearm required by 26 U.S.C. § 5841 to be registered in the National Firearms Registration and Transfer Record. Possession by the defendants of an unregistered pen gun violated 26 U.S.C. § 5861(d), and the unregistered firearm was related to various charges in the indictment.

**5** Both Coleen and Jerry Sexton were convicted of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1); possession with intent to distribute amphetamine, 21 U.S.C. § 841(a)(1); possession of a firearm during a drug trafficking crime, 18 U.S.C. § 924(c); conspiracy to distribute cocaine and marijuana, 21 U.S.C. § 846; conspiracy to use a firearm in a drug trafficking crime, 18 U.S.C. § 924(o); and possession of a nonregistered firearm, 26 U.S.C. § 5861(d). In addition, Jerry Sexton was convicted of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), and possession of a firearm by a fugitive, 18 U.S.C. § 922(g)(2).

II.

The crux of the Sextons' appeal is their allegation that there was no probable cause to arrest Ms. Sexton at the Golden Corral parking lot, because there was no warrant on file for her arrest. Had she been properly released at the Golden Corral, they contend, she would have been free to leave with the motor home, the title of which was in her name, and none of the damaging evidence in the Winnebago would have been discovered.[6] In considering the denial of the Sextons' motions to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992).

A.

During the hearing conducted by the district court on the motions to suppress, counsel for Mr. and Ms. Sexton both stipulated that the BOLO provided the officers with the reasonable suspicion needed to stop the Winnebago, detain the two suspects at the scene, and question them. See Terry v. Ohio, 392 U.S. 1, 21, 30 (1968) (a brief investigative stop is permissible if the police officer has a reasonable

_____

[6] Having conceded below that there was probable cause to arrest him based on the BOLO and the fact that there were warrants on file for his arrest, Mr. Sexton hinges his appeal on whether there was probable cause to arrest Ms. Sexton.

It is unclear to us, however, how Mr. Sexton can assert a violation of his Fourth Amendment rights based on the alleged illegality of Ms. Sexton's arrest. The Supreme Court has had a "long history of insistence that Fourth Amendment rights are personal in nature." Rakas v. Illinois, 439 U.S. 128, 140 (1978). "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." Alderman v. United States, 394 U.S. 165, 174 (1969); Rakas, 439 U.S. at 133-34 (quoting same). Mr. Sexton thus cannot challenge the legality of the arrest of Ms. Sexton; this claim belongs to her alone. Nor may he seek to exclude evidence discovered pursuant to the inventory search based on the claim that they are the ill-gotten fruits of the illegal arrest of Ms. Sexton. Again, his Fourth Amendment rights were not infringed. Rakas, 439 U.S. at 134. However, we need not decide this issue -- which was neither presented in the district court nor on appeal. Because the arrest of Ms. Sexton was valid, there is no relief for Mr. Sexton even under his theory.

suspicion based on "specific and articulable facts" that "criminal activity may be afoot"). Although appellants argue on appeal that the stop of the Winnebago was improper under Terry , they waived this issue in the district court and cannot properly raise it on appeal. United States v. Maxton, 940 F.2d 103, 105 (4th Cir. 1991).

Trooper Albert clearly had reasonable suspicion to perform an investigatory stop of the motor home based on the BOLO. That the BOLO broadcast incorrectly suggested Ms. Sexton was the subject of an outstanding arrest warrant does not vitiate the legality of the stop of the Winnebago because Mr. Sexton was, in fact, wanted and was travelling in the motor home. That is, even if the BOLO had specifically indicated that only Mr. Sexton was wanted, this would have provided the reasonable suspicion necessary for a Terry stop of the motor home.

B.

Counsel for Mr. Sexton conceded at the suppression hearing that there was probable cause to arrest his client. Indeed, there was probable cause to arrest Mr. Sexton on the basis of the BOLO. Ms. Sexton contends, however, that there was no probable cause to arrest her, because the BOLO did not specifically identify whom the warrants were for, and it turned out that there were, in fact, no warrants on file for Ms. Sexton. She also argues that Trooper Albert improperly arrested her on the basis of the BOLO alone, and not for having presented him with false identification.

In accordance with Supreme Court precedent, this circuit has defined probable cause to arrest as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." United States v. Williams , 10 F.3d 1070, 1073-74 (4th Cir. 1994) (quoting Michigan v. DeFillippo , 443 U.S. 31, 37 (1979)).

The test of probable cause is an objective one. We have stated that "[t]he Supreme Court's definition of probable cause asks not whether the arresting officer reasonably believed that the arrestee had commit-

7

ted a crime, but whether the evidence was sufficient to support such a reasonable belief." United States v. Han , 74 F.3d 537, 541 (4th Cir. 1996) (citation omitted). The subjective state of mind of the arresting officer is irrelevant. Id.

At the suppression hearing, Trooper Albert testified that he arrested both the Sextons after they presented him with false identifications -- a Class 2 misdemeanor in Virginia pursuant to Va. Code Ann. § 18.2-204.2 -- bearing the names of the aliases that were reported in the BOLO. But under Han, regardless of whether Trooper Albert arrested Mr. and Ms. Sexton based solely on the BOLO, there was proper ground for both arrests. The false IDs alone, or in combination with the BOLO, clearly satisfy the objective probable cause test, and we need not inquire further into Trooper Albert's state of mind. See 1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 3.3, at 188 (1984) ("if the objective probable cause test is met it is not also necessary to establish that the particular officer making the arrest or search subjectively believed probable cause was present"). In other words, when Ms. Sexton presented the police officers with false iden-tification there was probable cause to arrest her, regardless of the BOLO. Thus the district court correctly held that there was probable cause to arrest both Mr. and Ms. Sexton.

Because there was probable cause to arrest Ms. Sexton based solely on her presentation of false identification, Officer Clark's search of Ms. Sexton's purse pursuant to the policies of the Rockbridge County jail was a valid search. Moreover, although some officers may have learned that there were no outstanding warrants for Ms. Sexton's arrest shortly before Officer Clark searched Ms. Sexton's purse, the district court did not clearly err in finding that there was no evidence that Officer Clark knew of this fact.

C.

Because it was proper for the officers to stop the motor home, and there was probable cause to arrest both of the Sextons, the officers could, and did, legitimately conduct a warrantless inventory search of the motor home pursuant to Virginia State Police policy. If an inven-tory search is conducted according to standard departmental proce-dures, the search will be upheld and the evidence admissible. Florida

8

v. Wells, 495 U.S. 1, 3-4 (1990); see also United States v. Brown, 787 F.2d 929, 932 (4th Cir. 1986) ("If the vehicle is in lawful custody, the police may inventory the vehicle, if such inventories are routine and conducted pursuant to standard police procedures, so long as the purpose of the inventory is to secure the car or its contents and not to gather incriminating evidence against the owner.").

Trooper Albert testified at the suppression hearing in the district court regarding Virginia State Police policy on inventory searches. He further testified that the search of the Winnebago was performed according to this policy. The defendants presented no evidence to either contradict or impeach this testimony.[7]

Nonetheless, the Sextons argue that the inventory search was not conducted according to established procedures. But there is nothing in the record to support their contention. We therefore conclude that the district court did not clearly err in finding that the search of the motor home was performed properly in accordance with established procedures.[8]

_____

[7] Albert testified that while he and another officer were waiting in the motor home for the third suspect to return they decided to inventory the vehicle, because

> since the subjects were under arrest, according to department policy, I have to inventory any vehicle I take and arrest anybody from because we're responsible for the contents of it and I should go ahead and start ISP-158, which is a Virginia State Police inventory form, and I went ahead and we started inventorying the motor home since it had such a vast amount of belongings inside of it.

[8] We also reject the Sextons' final issue on appeal -- that the district court erroneously shifted the burden of persuasion to the defendants and improperly restricted their ability to challenge the validity of the FBI BOLO broadcasts. Nothing in the record suggests that the burden was shifted to the defendants to prove lack of probable cause. The district court properly refused to permit defense counsel to belabor the issue of the validity of the FBI messages when the point they were focusing on -- the lack of outstanding warrants for Coleen Sexton's arrest -- had already been conceded by the Government.

III.

In sum, the defendants concede that it was proper for the police officers to stop the motor home, detain the Sextons, and make reasonable inquiry of them. Mr. Sexton conceded at the suppression hearing that there was probable cause to arrest him. Without deciding whether the BOLO alone was sufficient to provide probable cause for the arrest of Ms. Sexton, we conclude that when she presented false evidence of her identity to Trooper Albert, he had probable cause to arrest her. Because Ms. Sexton was lawfully arrested, the ensuing search of her possessions at the jail, which uncovered cocaine, was valid. And because both of the Sextons were lawfully arrested, the inventory search of the Winnebago was also valid. Finally, the district court did not err in finding that the inventory search was conducted according to Virginia State Police policy.

The convictions of each defendant must therefore be affirmed.

AFFIRMED

10