**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 08-4594**

───────────

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

JOSEPH MICHAEL FORT,

              Defendant - Appellant.

───────────

Appeal from the United States District Court for the District of South Carolina, at Columbia. Matthew J. Perry, Jr., Senior District Judge. (3:07-cr-00593-MJP-1)

───────────

Submitted: January 29, 2009     Decided: February 27, 2009

───────────

Before NIEMEYER, MICHAEL, and GREGORY, Circuit Judges.

───────────

Affirmed by unpublished per curiam opinion.

───────────

James P. Rogers, Assistant Federal Public Defender, Columbia, South Carolina, for Appellant. W. Walter Wilkins, United States Attorney, Jimmie Ewing, Assistant United States Attorney, Columbia, South Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Joseph Michael Fort appeals from his conviction and eight-month sentence after pleading guilty to possession of a Remington 12-gauge shotgun with a barrel length of less than 18 inches, and a Colt, model AR-15, .223 caliber machine gun, neither of which were properly registered, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 (2006). Fort contends that police violated his Fourth Amendment rights by improperly seizing the firearms during a search of his vehicle, as there was no justification for carrying out an inventory search after police discovered him in medical distress behind the wheel of his parked car. Fort further asserts that the seizure of the weapons cannot be justified based on the fact that they were in plain view, as the incriminating nature of the firearms was not immediately apparent and could only be determined after the officers handled them. After thoroughly reviewing the record, we conclude that the district court did not err in denying Fort's motion to suppress.

This court reviews the district court's factual findings underlying a motion to suppress for clear error, and the district court's legal determinations de novo. United States v. Wilson, 484 F.3d 267, 280 (4th Cir. 2007) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). When a suppression motion has been denied, the evidence is reviewed in

2

the light most favorable to the government. <u>United States v.</u> <u>Uzenski</u>, 434 F.3d 690, 704 (4th Cir. 2006).

A warrantless search or seizure is prohibited by the Fourth Amendment unless it falls within an exception to the warrant requirement. <u>See</u> <u>Horton v. California</u>, 496 U.S. 128, 134 n.4 (1990). An inventory search qualifies as a well-defined exception to the warrant requirement of the Fourth Amendment, as the exception serves to "guard against claims of theft, vandalism, or negligence" by police, as well as to "avert any danger to police or others that may have been posed by the property." <u>See</u> <u>Colorado v. Bertine</u>, 479 U.S. 367, 373 (1987). The Fourth Amendment requirements are violated when, considering the totality of the circumstances, an inventory search is unreasonable. <u>See</u> <u>South Dakota v. Opperman</u>, 428 U.S. 364, 373-75 (1976). If an inventory search is conducted according to standard departmental policies and not as a ruse for an impermissible search, the search does not violate the Fourth Amendment, and evidence seized during the search is admissible at trial. <u>See</u> <u>Florida v. Wells</u>, 495 U.S. 1, 3-5 (1990); <u>United States v. Brown</u>, 787 F.2d 929, 932 (4th Cir. 1986). "[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be

3

able to devise equally reasonable rules requiring a different procedure." Bertine, 479 U.S. at 369-70 & 374.

Fort contends there was no justification for performing an inventory search because there was no need to tow or impound the vehicle, as Fort's wife was given custody of the vehicle and permitted to drive it home. However, the decision to have the vehicle towed, and therefore subject it to an inventory search, was made before Fort's wife arrived and spoke to the officers. The lead officer testified that a tow truck was called and en route before Fort's wife arrived at the scene "about halfway through the inventory." The officer stated that he decided to have the vehicle towed and to take inventory of the items inside based on the fact that Fort was unable to give consent for someone to take custody of the vehicle, and the actual owner of the car was also unavailable.

Fort also asserts that the police policy manual did not permit his vehicle to be towed under these circumstances; however, the manual's "Property Control Safeguards" state that "[w]hen an injured driver is removed from an accident scene and/or it is necessary to tow the vehicle," a tow truck request should be put in to the dispatcher and "[t]he officer will conduct an inventory [] of the contents of the vehicle." Based on the information available to him at the time, the lead officer acted well within his discretion in determining that it

4

was necessary to have the car towed. As the Supreme Court has noted, there is no prohibition on the discretion of a police officer to determine how to store and secure an unattended vehicle "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Bertine, 479 U.S. at 375; see also United States v. Rodriguez-Morales, 929 F.2d 780, 787 (1st Cir. 1991) (when the police have "solid, noninvestigatory reasons for impounding a car, there is no need for them to show that they followed explicit criteria in deciding to impound, as long as the decision was reasonable").

Furthermore, the police inventory policy did not specifically address the procedures to be followed in the particular circumstances present in this case, especially considering the dangerous nature of the items that were visible inside of the vehicle. See United States v. Banks, 482 F.3d 733, 740 (4th Cir. 2007). In such a situation, the police are not required to comply with "all the written directives governing one particular application of the standardized procedures for inventory searches"; rather, the relevant question is whether the officers, in light of the unusual circumstances, "acted in accordance with standard procedures more generally." Id. In this case, the police properly abided by the "Property Control Safeguards" that are generally employed

5

for traffic accidents in which a driver is removed from the scene. Accordingly, because the police did not violate any clear directives under their towing and inventory policy and there is no evidence that the search was initiated by an investigatory motive, we find that the officers did not abuse their discretion and that the decision to have Fort's vehicle towed and inventoried was reasonable.

As for the manner in which the officers carried out the inventory search of the vehicle, Fort has failed to demonstrate that the seizure of the firearms was in any way unreasonable. Looking into the vehicle, officers could see, in plain view, that Ford was in possession of an assault rifle with a grenade launcher attachment, loaded magazines, multiple boxes of ammunition, and police tactical gear. In all, seven different firearms, many of which were loaded, were taken out of the vehicle and placed into police custody for safekeeping. One of the key purposes served by an inventory search is to provide officers with precise knowledge of the property in order to "avert any danger to police or others that may have been posed by the property." Bertine, 479 U.S. at 373; see also United States v. Ford, 986 F.2d 57, 60 (4th Cir. 1993). In light of the inherently hazardous nature of the items found in Fort's car, the officers were fully justified in carrying out a complete search of the vehicle to ensure that no dangerous or

6

illegal items remained inside. See Wells, 495 U.S. at 4. Therefore, considering the totality of the circumstances, we find the inventory search was reasonable and not in violation of Fort's Fourth Amendment rights.[*]

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal conclusions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

---

[*] Because the officers' actions were undertaken as part of a valid inventory search, it is unnecessary to determine whether the officers were alternatively justified in seizing the weapons because they were in plain view.

7