**UNITED STATES of America**

v.

**Shawn F. ENGLE, Defendant.**

**Crim. No. 2:09cr70.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Dec. 22, 2009.

Katherine Lee Martin, Robert John Krask, United States Attorney's Office, Norfolk, VA, for United States of America.

Richard Joseph Colgan, Office of the Federal Public Defender, Norfolk, VA, for Defendant.

## ORDER

ROBERT G. DOUMAR, District Judge.

This case comes before the Court for decision on four matters: a Motion to Suppress, filed by Defendant Shawn F. Engle ("Defendant") on August 10, 2009; A Motion to Dismiss Count One of the Indictment for Lack of Venue ("Motion to Dismiss"), filed by Defendant on August 10, 2009; a determination of Defendant's mental competency to stand trial; and a Motion to continue trial until March 2, 2010. The Court held a hearing on these issues on December 2, 2009.

The Court first addresses Defendant's competency to stand trial. By agreement of the parties, Dr. Glenn Rex Miller, Jr., conducted a psychological examination of Defendant pursuant to 18 U.S.C. § 4247(b). Dr. Miller found that "[b]ased on a review of the records and the results of the evaluation, the defendant does not presently appear to be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." The Court agrees. According, the Court **FINDS** that Defendant is mentally competent to stand.

The Court next addresses the Motion to Dismiss. Count One of the Superseding Indictment charges Defendant with sexual exploitation of a minor in violation of § 2251(a). Section 2251(a) is a continuing offense. *See United States v. Kapordelis,* 569 F.3d 1291, 1307 (11th Cir.2009). As a continuing offense, a violation of § 2251 can be prosecuted in any judicial district into which a defendant transports a visual depiction of sexual conduct produced in violation of § 2251(a). *See id.* Defendant allegedly transported a visual depiction of sexual conduct produced in violation of § 2251(a) into the Eastern District of Virginia. Accordingly, venue is proper on Count One of the Superseding Indictment. Defendant's Motion to Dismiss is **DENIED.**

The Court next addresses Defendant's Motion to Suppress. At the time of Defendant's arrest, his vehicle was parked askew in the driveway of 4817 Westgrove Avenue in Virginia Beach. Defendant informed the arresting officers of the Virginia Beach Police Department (VBPD) that he did not live at 4817 Westgrove. The officers unsuccessfully attempted to locate a resident of 4817 Westgrove to take custody of the vehicle. After failing to locate a resident, the VBPD arranged to have Defendant's vehicle towed. A VBPD officer then searched Defendant's car and inventoried its contents. The Court finds that this search was valid under the inventory search exception to the Fourth Amendment's warrant requirement. *See United States v. Brown,* 787 F.2d 929 (4th Cir.1986). Although this initial inventory search was interrupted and some of the evidence in question was located by a detective, the Court finds that the detective's search was a continuation of a valid inventory search and, in any event, any evidence seized by this detective would inevitably have been discovered pursuant to the initial inventory search. Therefore, the Motion to Suppress is **DENIED.**

Finally, the Court address Defendant's oral motion to set a trial date outside the time frame specified by the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). The United States does not object to this motion. Moreover, Defendant waived the Speedy Trial Act in open court. The Court finds that the ends of justice served by setting this matter outside of time frame specified by 18 U.S.C. § 3161(c)(1) outweigh the best interest of the public and the defendant in a speedy trial. Accordingly, De-

fendant's Motion to set a trial date outside the time frame specified by the Speedy Trial Act is **GRANTED**. This matter is hereby set for trial on March 2, 2010.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

### A. Kidnapping Allegations

Defendant stands accused of various charges related to child pornography, witness tampering, and enticement of a minor. The prosecution alleges that Defendant communicated with a 13–year–old minor named K.M. during the summer of 2008. Allegedly, K.M. contacted Defendant in late August of 2008 and asked him to take her away from her family home in South Carolina. The prosecution asserts that Defendant agreed to do so, and that he took K.M. to a house at 4817 Westgrove Road, Virginia Beach, Virginia.

On August 30, K.M.'s father reported her missing. The Greenville County Sheriff's Office ("GCSO") found K.M.'s cellphone and allegedly discovered some messages sent by Defendant. The prosecution claims that the GSCO contacted Defendant to ascertain K.M.'s whereabouts, but Defendant gave the GSCO false information. K.M. was found at Defendant's mother's home on September 16, 2008. K.M. gave a signed statement claiming that Defendant had taken her to Virginia Beach and sexually molested her. South Carolina issued a warrant for Defendant's arrest. The GSCO contacted Detective Everrett of the Virginia Beach Police Department (VBPD), provided him with the details of K.M.'s statement, and advised him of Defendant's possible presence in the area.

### B. Defendant's Arrest

On October 24, 2008, a Virginia Beach patrol officer reported seeing Defendant's vehicle parked at the 4800 block of Westgrove road. The VBPD dispatched two officers, Officer Shank and Officer Cahill to the location. The officers arrived at 4817 Westgrove in marked police vehicles at approximately 3:43 p.m., and took up positions on streets near the residence. Shortly thereafter, Officer Shank observed Defendant driving away from the residence in a 2003 Isuzu Rodeo with North Carolina license plates. As Officer Shank followed Defendant's vehicle, Defendant made a series of right turns, turning back towards 4817 Westgrove. Before Defendant could pull into the driveway, Officer Shank activated his siren. Defendant pulled into the driveway of 4817 Westgrove, parking his vehicle partly on the driveway and partly on the grass in front of the home.

Defendant stepped out of the vehicle, and Officer Cahill placed him in custody inside a police vehicle shortly after 4:00 p.m. The officers verified Defendant's identity by examining his driver's license, which was issued by the state of North Carolina. The officers also used a computer to verify Defendant's driver's license. The results indicated that Defendant's address was a residence in North Carolina. When questioned, Defendant indicated that he was visiting the residence at 4817 Westgrove, and that he stayed at the location for two to three days from time to time. Officer Cahill transported Defendant from the scene at approximately 4:13 p.m.

### C. Search of Defendant's Vehicle

Officer Shank remained at the scene at 4817 Westgrove. He knocked at the door of 4817 Westgrove, but no one answered. He then contacted a sergeant with the VBPD for instructions concerning Defendant's vehicle. The sergeant instructed Officer Shank to impound the vehicle, and a wrecker was called to tow the vehicle. Pursuant to VBPD policy, Officer Shank

began to inventory the vehicle's contents. Officer Shank inventoried a number of items in the vehicle, including knives in a nylon pouch, an ipod, and a cellular phone.

Meanwhile, at the VBPD detective bureau, Detective Everrett conducted an interview of Defendant. Detective Everrett had previously been contacted by the GCSO, and was aware of K.M.'s statement concerning her abduction. According to Detective Everrett, Defendant admitted to knowing K.M., but was unwilling to provide further details. Once the interview was completed, Detective Everrett went to 4817 Westgrove Road.

Upon arrival, Detective Everrett instructed Officer Shank to stop his inventory. Detective Everrett reviewed the inventory sheet that Officer Shank had prepared, and ordered the knives, cellphone, and iPod seized. These items were removed from the car and logged into evidence. Detective Everrett then inventoried the remaining contents of Defendant's vehicle. He discovered several items, including a digital video camera, an "SD" memory card, and various phone records. All the items discovered by Everrett were listed on a "Property and Evidence Voucher" executed by Everrett.

## D. Search of Defendant's Camera, Cellphone, and Memory Card

Two days after Defendant's arrest, on October 26, 2008, Detective Everrett secured a warrant to search the camera, cellphone, and memory card seized from Defendant's vehicle. A search of Defendant's cellphone revealed several messages between K.M. and Defendant, as well as several pictures of K.M. A search of the memory card uncovered a 45–minute video showing Defendant engaged in sex with an individual. The individual in the video was not K.M., however. The prosecution alleges that subsequent investigation into De-

fendant's phone records revealed that the individual depicted in the video was a Pennsylvania minor named A.M. In an interview with police, A.M. allegedly stated that she had engaged in sexual activity with Defendant on two occasions. On the second occasion, which allegedly took place in a Motel 8 in Somerset, Pennsylvania, Defendant allegedly videotaped their encounter.

## E. Alleged Witness Tampering and Enticement

In the months following his arrest, Defendant allegedly contacted various witnesses, including K.M. and K.M.'s mother, in an attempt to influence their testimony. Defendant also allegedly sent letters to an individual identified as "C.R.," instructing C.R. to destroy a personal computer. Additionally, Defendant allegedly contacted K.M. on at least two occasions, detailing the sexual relationship that he hoped to continue with her upon his release from custody.

## F. Indictment

On May 8, 2009, a grand jury issued an indictment charging Defendant with numerous offenses. On August 5, 2009, the grand jury issued a superseding 14–count indictment. Count One, which is the subject of Defendant's Motion to Dismiss, charges Defendant with sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a). Count Two charges Defendant with possession of a visual depiction of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252A(a)(5)(B). Counts Three and Five charge Defendant with witness tampering in violation of 18 U.S.C. § 1512(b)(2)(B). Counts Four and Nine, Ten, and Eleven charge Defendant with witness tampering in violation of 18 U.S.C. § 1512(b)(3). Counts Six, Seven, and Eight charge Defendant with entice-

ment of a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). Counts Twelve, Thirteen, and Fourteen charge Defendant with witness tampering in violation of 18 U.S.C. § 1512(b)(1).

### G. Guilty Plea

On August 31, 2009, Defendant appeared before this Court to plead guilty pursuant to an 11(c)(1)(C) plea agreement. The Court deferred acceptance of the Defendant's plea pending receipt of a Presentence Report.

On September 24, 2009, Defendant filed a Motion to Withdraw Guilty Plea. As the Court had not yet accepted his plea of guilty, the Court granted this Motion by oral order on October 8, 2009.

### H. Psychological Evaluation

At the hearing on October 8, 2009, the Court expressed concern about Defendant's competency to stand trial. Defendant filed a Motion to Determine Competency on October 9, 2009. The Court granted Defendant's Motion on October 13, 2009. The Court ordered the parties to confer and to identify a mutually agreeable psychiatrist or psychologist to evaluate Defendant. The parties agreed upon Dr. Glenn Rex Miller, Jr., and the Court designated Dr. Miller to conduct an evaluation. Dr. Miller conducted an evaluation of Defendant on November 25, 2009.

## II. FINDINGS ON DEFENDANT'S MENTAL COMPETENCE

Dr. Miller conducted an evaluation of Defendant on November 25, 2009, and has submitted an evaluation report to the Court and to the parties. In the report,

Dr. Miller writes that "[b]ased on a review of the records and the results of the evaluation, the defendant does not presently appear to be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

The Court has carefully reviewed Dr. Miller's evaluation report, and incorporates this report by reference.[1] The Court makes the following findings by a preponderance of the evidence. *See United States v. Locke*, 269 Fed.Appx. 292, 293 (4th Cir.2008) (unpublished). The Court finds that Dr. Miller's report—and the results therein—is consistent with psychiatric theory, research, and practice. The Court finds that Defendant has the present ability to consult with his attorney with a reasonable degree of rational and factual understanding, and that he has a rational and factual understanding of the proceedings against him in this matter. Based on these findings, the Court **FINDS** that Defendant is not suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. *See United States v. Grant*, No. 5:09cr05, 2009 WL 2032918 (W.D.Va. July 14, 2009) (Welsh, Mag. J.).

## III. PRESENT MOTIONS

On August 10, 2009, Defendant filed a Motion to Dismiss and a Motion to Suppress. The Motion to Dismiss relates to Count One of the Superseding Indictment,[2] which charges Defendant with sexual ex-

---

1. To protect Defendant's interest in the confidentiality of Dr. Miller's report, the Court will not describe Dr. Miller's specific findings in detail.

2. Although the Motion to Dismiss refers generally to "the indictment," the Court interprets the Motion as a Motion to Dismiss Count One of the Superseding Indictment.

ploitation of a minor in violation of 18 U.S.C. § 2251(a). Defendant argues that "[t]here appears to be no evidence of conduct within the Eastern District of Virginia, that would constitute a violation of 18 U.S.C. § 2251(a), i.e., use, persuasion, inducement, and enticement of a female minor under the age of 18 to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct." (Def.'s Mot. to Dismiss 3).

The United States filed a Response on August 18, 2009. The United States argues that § 2251(a) is a "continuing offense" within the meaning of 18 U.S.C. § 3237(a). (U.S. Resp. to Def.'s Pretrial Mots. 6). The United States further argues that Defendant's offense was not "complete" until Defendant transported a sexual videotape into the Eastern District of Virginia, and that venue accordingly lies in this district. (Id.). In support of its position, the United States cites the Fourth Circuit's unpublished decision in United States v. Reigle, 228 Fed.Appx. 353 (4th Cir.2007) (unpublished).

Defendant's Motion to Suppress seeks the exclusion of "all evidence seized by agents of the Federal Bureau of Investigation (FBI), and Virginia Beach Police Department officers (VBPD) from his automobile on October 24, 2008." (Def.'s Mot. to Suppress 1). Defendant argues that at the time of his arrest, "the police could not reasonably expect to find evidence in [Defendant's] car related to the offense for which he was arrested." (Id. at 4).

In response, the United States argues that Defendant's "car was properly subjected to an inventory search pursuant to established VBPD policy." (U.S. Resp. to Def.'s Pretrial Mots. 14). The United States further argues that Detective Everrett had probable cause to search Defendant's vehicle, that Detective Everrett had reasonable suspicion to search Defendant's

vehicle, and that even if the search was improper, the exclusionary rule should not apply because of the good-faith and inevitable discovery exceptions to the exclusionary rule. (Id. at 15–17).

In addition to these two Motions, Defendant made an oral Motion on December 2, 2009, to continue trial until March 2, 2010. The United States does not oppose this Motion.

## IV. ANALYSIS

### A. Motion to Dismiss

■ Absent a specific statutory venue provision, proper venue "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." United States v. Anderson, 328 U.S. 699, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946); United States v. Bowens, 224 F.3d 302, 308 (4th Cir.2000). When multiple counts are alleged in an indictment, venue must be proper as to each count. United States v. Robinson, 275 F.3d 371, 378 (4th Cir.2001). To determine venue, "a court must first examine the statute defining the offense to identify the essential conduct elements of the offense and where they occurred." United States v. Smallwood, 293 F.Supp.2d 631, 638 (E.D.Va.2003).

■ Section 2251(a) provides that
Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if

such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a). The crux of Defendant's argument is that § 2251(a)'s essential conduct element is employing, using, or inducing a minor to engage in sexually explicit conduct. The remaining elements of the offense, including the actual transportation of child pornography, are essential elements—but they are not essential *conduct* elements. Therefore, venue is proper only in the state where Defendant's criminal conduct occurred, namely, Pennsylvania.

Although this argument is not implausible, the Court finds that venue on Count One is proper in the Eastern District of Virginia. 18 U.S.C. § 3237 provides that any "offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves." The statutory

text of § 2251(a) clearly indicates that it is an offense "involving ... transportation in interstate or foreign commerce," and hence a continuing offense. *See United States v. Kapordelis,* 569 F.3d 1291, 1307 (11th Cir.2009); *cf. United States v. Rowe,* 414 F.3d 271, 278 (2d Cir.2005) (holding that " § 2251(c) is clearly a continuing offense"). As such, it can be prosecuted in any district into which the visual depiction of child pornography moves.

While the Court has only located three judicial opinions dealing with the question of venue in a § 2251(a) prosecution, every one of these decisions supports the Court's conclusion that venue is proper in the present case. In *United States v. Kapordelis,* the defendant transported digital photographs from Greece and South Carolina into Georgia. 569 F.3d at 1308. The Eleventh Circuit held that venue was proper in Georgia, notwithstanding the fact that the photographs were taken in other districts. Similarly, in *United States v. Reigle,* the Fourth Circuit held, albeit in an unpublished opinion, that where child pornography was produced in Pennsylvania but downloaded in Maryland, venue was proper in Maryland. 228 Fed.Appx. 353, 355–57 (4th Cir.2007) (unpublished). Finally, in *United States v. Jang,* a district court in Indiana assumed that venue was statutorily authorized in the district into which child pornography was transported. No. 1:07cr52, 2007 WL 4616927 (S.D.Ind. 2007).[3]

■ Defendant argues that *Reigle* is distinguishable because the "instant case did not involve the discovery or download of any depiction from a computer in the Eastern District of Virginia." The Court finds such a distinction to be unpersuasive

3. The Court in *Jang* expressed concern about the constitutionality of trying a defendant in a district where he neither intended nor knew that the pornography would be transported.

These concerns are not implicated in the present case, because there is no suggestion that the videocamera and memory card were transported without Defendant's knowledge.

for two reasons. First, venue in the Eastern District of Virginia is premised on the fact that a violation of § 2251(a) is a continuing offense. As a continuing offense, a violation of § 2251(a) can be prosecuted in any district into which a visual depiction moves, whether such movement occurs through an internet download or through physical transportation of a memory card. Second, even if this Court were to disregard *Reigle*, the Court still finds the Eleventh Circuit's decision in *Kapordelis* to be persuasive. Like the present case, *Kapordelis* involved the physical transportation of child pornography on a camera. As the Eleventh Circuit found in *Kapordelis*, such transportation is sufficient to establish venue in the district into which the pornography moves.

Based on the analysis and precedent described above, the Court hereby **DENIES** Defendant's Motion to Dismiss Count One of the Superseding Indictment.

### B. Motion to Suppress

■ As it is undisputed that the search of Defendant's vehicle was conducted without a warrant, the search was invalid unless the government demonstrates that an exception to the warrant requirement applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The Court finds that Officer Shank's search of Defendant's vehicle falls within the inventory search exception to the Fourth Amendment's warrant requirement. *See United States v. Brown*, 787 F.2d 929 (4th Cir.1986). The Court notes that some of the items recovered, including the video camera and the SD card, were found by Detective Everrett. Because the Court finds that Detective Everrett's search was a valid inventory search and that Officer Shank would inevitably have discovered these items if Detective Everrett had not found them first, however, the

Court **DENIES** Defendant's Motion to Suppress.

■ The Court finds that Officer Shank's search of Defendant's vehicle was a valid inventory search. Police officers may search a vehicle without a warrant if i.) the vehicle is in the lawful custody of the police, ii.) the search is routine and conducted pursuant to standard police procedures, and iii.) the purpose of the search is to secure the car or its contents and not to gather incriminating evidence against the owner. *United States v. Murphy*, 552 F.3d 405, 412 (4th Cir.2009). Based on Officer Shank's unrebutted testimony from the hearing, the Court finds that the search of Defendant's vehicle was conducted pursuant to standard VBPD procedures. The Court further finds that the purpose of Officer Shank's search was to secure the car and its contents, and not to gather incriminating evidence.

Defendant's primary argument is that Officer Shank should have left the vehicle in the custody of the residents of 4817 Westgrove, rather than impounding the vehicle. Under Fourth Circuit precedent, however, a vehicle is in lawful custody if the police officer's decision to impound the vehicle is reasonable. *United States v. Brown*, 787 F.2d 929 (4th Cir.1986). In *Brown*, the police impounded the defendant's vehicle from a parking lot in an apartment complex. *Id.* at 932. The defendant argued that police should have honored his request to leave the vehicle in the custody of his girlfriend, who was allegedly a resident of the complex. *Id.* The Fourth Circuit rejected this argument, holding that the decision to impound was reasonable based on the defendant's previous misrepresentations and the officers' skepticism about the girlfriend's residence. *Id.* at 932–33.

The present case is indistinguishable from *Brown*. The VBPD made a reason-

able decision to impound Defendant's vehicle. Defendant produced a North Carolina driver's license, his home address was in North Carolina, and his vehicle's license tags were North Carolina tags. His association with the residents of 4817 Westgrove was vague and unsubstantiated. Most importantly, Officer Shank knocked on the door and attempted to speak with the residents of 4817 Westgrove, but no one answered. Under these circumstances, there is no question that Officer Shank's decision to impound the vehicle was reasonable. *See id.* at 932 ("[T]he police officer in this case could reasonably have impounded Brown's vehicle either because there was no known individual immediately available to take custody of the car, or because the car could have constituted a nuisance in the area in which it was parked.").

■ Notably, Detective Everrett instructed Officer Shank to stop inventorying Defendant's vehicle. Detective Everrett then continued to search the vehicle, and discovered several of the items that Defendant now seeks to suppress.[4] The Court finds, however, that Detective Everrett's search was a continuation of Officer Shank's initial inventory search. Detective Everrett testified at the hearing that he filled out an inventory sheet, and the United States introduced a "Property and Evidence Voucher" filled out by Detective Everrett, which inventories the items Detective Everrett seized. Detective Everrett may have personally conducted the search because he expected to find evidence in Defendant's car. But it is well settled that the "mere expectation of uncovering evidence does not invalidate an otherwise lawful inventory search." *United States v. Gallo,* 927 F.2d 815, 819–20

(5th Cir.1991); *see also United States v. Richardson,* 229 F.3d 1145, at *2 (4th Cir. 2000) (unpublished) (upholding inventory search where officers had received tips about drugs in vehicle and did not fill out inventory sheet). Under the circumstances, the Court finds that Detective Everrett's search was a valid inventory search.

■■ The Court also finds, as an alternative basis for its holding, that Officer Shank would inevitably have discovered all of the evidence in question if Detective Everrett had not instead searched the vehicle. The inevitable discovery exception to the exclusionary rule applies "where the facts indicate another search inevitably would have occurred and would inevitably have uncovered the evidence, and that search falls within an exception to the warrant requirement." *United States v. Allen,* 159 F.3d 832, 841 (4th Cir.1998). In this case, a lawful inventory search *was* occurring at the time Detective Everrett began to search the car, and there is no question that Officer Shank's search would have uncovered the evidence in question if Detective Everrett had not intervened. Thus, even if the Court were to find Detective Everrett's actions to be in violation of the Fourth Amendment, the evidence would still not be subject to exclusion because it inevitably would have been discovered in the course of Officer Shank's search. *Cf. Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (holding exclusionary rule did not apply where police called off search in response to unlawfully obtained confession); *United States v. Young,* 573 F.3d 711, 726 (9th Cir.2009) (where officers would inevitably have discovered evidence absent illegal search, inevitable discovery exception is necessary to "avoid putting the govern-

---

**4.** Specifically, Detective Everrett found the video camera, the SD card, and the phone records recovered in Defendant's vehicle. Officer Shank discovered the cellular phone recovered in the vehicle.

ment in a worse position than it would be absent a police officer's error").

For the reasons stated above, the Court hereby **DENIES** Defendant's Motion to Suppress. Because the Court finds that all the evidence in question was obtained pursuant to valid inventory searches conducted by Officer Shank and Detective Everrett, it is not necessary to decide whether the searches would have qualified under a good-faith exception to the exclusionary rule. More specifically, it is not necessary to decide whether Officer Shank or Detective Everrett could have relied in good faith on *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). At the time of Defendant's arrest, officers were permitted to search vehicles as a contemporaneous incident to the arrest of their occupants. *See, e.g., United States v. Holmes*, 376 F.3d 270, 275 (4th Cir.2004). Although *Belton* is no longer governing precedent, *see Arizona v. Gant*, —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), some courts have concluded that the good-faith exception applies to searches conducted in objectively reasonable reliance on pre-*Gant* precedent. *Compare United States v. McCane*, 573 F.3d 1037 (10th Cir.2009) (applying good-faith exception); *United States v. Wesley*, 649 F.Supp.2d 1232 (D.Kan.2009) (same); *United States v. Allison*, 637 F.Supp.2d 657 (S.D.Iowa 2009) (same); *United States v. Grote*, 2009 WL 2068023 (E.D.Wash. 2009) (same), *with United States v. Contreras*, 348 Fed.Appx. 263 (9th Cir.2009) (refusing to apply exception); *United States v. Buford*, 623 F.Supp.2d 923 (M.D.Tenn. 2009) (same).

### C. Speedy Trial

Trial in this matter is currently set for March 2, 2010. This trial date falls outside the seventy-day window contemplated by the Speedy Trial Act, 18 U.S.C. § 3161(c)(1).[5] Defendant has moved to continue trial until March 2, 2010, and to exclude any period of delay resulting from this continuance from the seventy-day window contemplated by the Speedy Trial Act, pursuant to § 3161(h)(7)(A). The Defendant orally in open court waived the requirements of the Speedy Trial Act.

The Court **FINDS** that the ends of justice served by granting a continuance outweigh the best interests of the public and the defendant in a speedy trial. Specifically, the Court finds that this case is, by the nature of the prosecution, extremely complex. In the course of discovery, the United States has produced eighty-three CDs of recorded phone conversations allegedly involving Defendant. The charges against Defendant are serious, and involve alleged crimes begun in several different states. The Court finds that despite the exercise of due diligence, Counsel for Defendant require a continuance to reasonably and effectively prepare for trial. The Court also finds that it is not possible to schedule a trial before March 2, 2010 without disrupting the schedule of either Counsel for Defendant or the Court. Defendant has consented to this continuance, and waived the Speedy Trial Act. Accordingly, the Court **GRANTS** Defendant's Motion to set trial for March 2, 2010 at 10:00 a.m. Counsel for the parties shall file all motions, other than motions *in limine*, before noon on January 5, 2010.

### V. CONCLUSION

For the reasons set forth herein, the Court **FINDS** Defendant competent to stand trial.

---

**5.** The Court notes that Defendant has filed a Motion to Compel, which is still pending. Any delay resulting from this Motion is also excluded from calculation for Speedy Trial Purposes. 18 U.S.C. § 3161(h)(1)(D).

The Court **DENIES** Defendant's Motion to Dismiss. The Court **DENIES** Defendant's Motion to Suppress. The Court **GRANTS** Defendant's Motion for a continuance of trial until March 2, 2010 at 10:00 a.m.

**IT IS SO ORDERED.**