**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Glenn B. FORD, Defendant–Appellant.**

**No. 92–5266.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1992.

Decided Jan. 29, 1993.

---

**58**

Timothy Jon LaFon, Ciccarello & Del Guidice, Charleston, WV, argued (Arthur T. Ciccarello, on brief), for defendant-appellant.

Kelly D. Ambrose, Asst. U.S. Atty., Charleston, WV, argued (Michael W. Carey, U.S. Atty., on brief), for plaintiff-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and LUTTIG, Circuit Judges.

## OPINION

POWELL, Associate Justice:

Appellant Glenn B. Ford challenges on three grounds his conviction for possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 (1986). Finding no error, we affirm.

### I

On April 18, 1991, Officer Sisson of the Charleston Police Department pulled over a car driven by Appellant Ford. A radio check revealed that Ford was driving on a suspended driver's license. Ford was arrested and taken to jail.

As Ford's automobile was obstructing traffic, Officer Sisson called a tow truck to remove it from the roadway. In conformity with Charleston Police Department policy, Officer Sisson conducted an inventory search of the vehicle before releasing it to the custody of the tow truck driver. This search yielded a sawed-off shotgun, with a barrel length of 9½ inches and an overall length of 17½ inches. Subsequent investigation revealed that this weapon was not registered.

On October 2, 1991, Ford was again apprehended driving an automobile containing a number of firearms, including an unregistered sawed-off shotgun with a barrel length of 15¼ inches and an overall length of 36 inches. Ford was arrested and taken to the police station. Once at the station, Ford allegedly asked Corporal Haynes, "When do I get my guns back?"

As a result of these two incidents, Ford was named in a two-count indictment alleging violations of the National Firearms Act. Count One related to the seizure from Defendant on April 18, 1991, of a shotgun with a barrel length of 9½ inches and an overall length of 17½ inches. Count Two charged Ford with the possession of the second sawed-off shotgun retrieved from his car on October 2, 1991.

The shotgun in Count Two was correctly identified by serial number and barrel length, but due to clerical error the overall length of the weapon was erroneously described as being 17½ inches in length.

This misstatement was the subject of a "Motion to Strike Surplusage" filed by the United States on January 24, 1992. The district court granted the motion to strike. Appellant Ford moved to suppress the sawed-off shotgun identified in Count One on the grounds that it was obtained as the result of an illegal search. The district court denied the motion. Ford also sought unsuccessfully to prevent the admission into evidence of his statement ("when do I get my guns back") to Corporal Haynes.

Trial began on January 27, 1992. The jury returned a verdict of guilty as to Count Two, but acquitted Ford of the charge in Count One.

## II

Ford contends that the district court erred in allowing the United States to strike the erroneous language from Count Two of the indictment. Specifically, Ford maintains that the variance between the indictment and the proof offered at trial violated his constitutional right to be tried on an indictment returned by a federal grand jury.

■ Ford's argument is without merit. It is undisputed that Count Two of the indictment misdescribed the barrel length of the sawed-off shotgun that was the subject of the charge in Count Two. When a variance in an indictment goes to form, however, the variance is not a substantial amendment requiring further consideration by a grand jury. *United States v. Morrow*, 925 F.2d 779, 781 (4th Cir.1991). Moreover, a variance between an indictment and trial proof is routinely disregarded unless it affects the substantial rights of the defendant. An indictment protects the substantial rights of the defendant if it insures:

(1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that

he may be protected against another prosecution for the same offense.

*Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 631, 79 L.Ed. 1314 (1935).

The modified indictment in this case clearly satisfied the *Berger* standard. *See also United States v. Barsanti*, 943 F.2d 428, 438 (4th Cir.1991). Appellant admitted to the district court judge that he noticed the variance prior to trial. Moreover, Ford is protected from the possibility of a second prosecution because the shotgun referred to in Count Two was clearly identified by brand name, model number, and serial number. Accordingly, the district court's decision to strike the erroneous reference to the length of the shotgun was entirely proper.

■ We similarly find no merit in Ford's contention that the court below erred in allowing the government to use an inculpatory statement made by Ford to impeach him. After the first day of trial, the United States gave Ford notice of the existence of an inculpatory statement ("when do I get my guns back?") allegedly made by Ford to Corporal Haynes during the booking process.[1] Based upon the late notice to the Defendant, the district court granted Ford's motion to exclude the inculpatory statement during the prosecution's case-in-chief. The district court declined, however, to restrict the government's use of the statement during cross-examination. Ford later took the stand in his own defense, and the government was able to use the statement to impeach Ford.

Ford urges that the district court erred in allowing the government to use the statement since it surfaced after the first day of trial. Under Rule 16 of the Federal Rules of Criminal Procedure, the remedy for a discovery violation is within the discretion of the district court. We cannot say that the remedy chosen by the district court here was an abuse of discretion. When Ford decided to take the stand, he did so with the knowledge that the government intended to use the statement to im-

---

1. Apparently, Corporal Haynes did not recall Ford's prior statement until Corporal Haynes was preparing to testify at Ford's trial. The district court found that the government's failure to produce the statement earlier was unintentional.

peach him. The late appearance of the statement undoubtedly complicated Ford's trial strategy. Even so, under the district court's ruling the ability to keep the statement out of evidence rested in Ford's hands. Considering all of the circumstances, the district court's decision to allow the government to use the statement to impeach Ford was not an abuse of discretion.

Finally, Ford maintains that the district court erred in denying his motion to suppress the shotgun found when Officer Sisson conducted an inventory search of Ford's car.[2] Inventory searches are reasonable under the Fourth Amendment when they serve to protect the owners of impounded property from theft of items contained within the property. Valid inventory searches also protect the impounding authority from dangerous items and from false claims for loss. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). While such searches are normally valid, "the importance of having such inventories conducted only pursuant to standardized police procedures" has often been stressed. *Colorado v. Bertine*, 479 U.S. 367, 376, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987) (Blackmun, J., concurring). The Court in *Bertine* noted, however, that nothing prohibits the discretion of police officers in making inventory searches so long as that discretion is based on standard criteria and on the basis of something other than the suspicion of criminal activity. *Bertine*, 479 U.S. at 375, 107 S.Ct. at 743.

Admitting the validity of inventory searches, Ford complains that here the inventory search was a guise to justify a criminal investigatory search. The record is devoid of any indication that Officer Sisson improperly utilized an inventory search to verify a suspicion of criminal activity. Moreover, the district court found that the

inventory search here was conducted "in accordance with the customary policy followed in such instances." While there was no written policy, the district court's finding that the department had standardized procedures regarding inventory searches fully satisfies the requirements of *Bertine*. The record supports the district court's finding in this regard, and thus we will not disturb that finding on appeal.

Accordingly, Ford's conviction is hereby AFFIRMED.

---

2. We note that any error related to this ruling was likely harmless error because Ford was acquitted of the charges in Count One. Ford argues that the evidence from Count One influenced the jury's consideration of Count Two. The relevant inquiry is whether the jury would have reached the same result as to Count Two without the admission of the shotgun in question. *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972). Given the sufficiency of the evidence supporting Ford's guilt as to Count Two, the error, if any, resulting from the trial court's decision to deny Ford's motion to suppress was harmless.