**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                           No. 98-4186

ROBERT W. PETTY,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CR-97-107-DKC)

Submitted: January 29, 1999

Decided: April 22, 1999

Before HAMILTON, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Dennis M. Hart, THE ROBINSON LAW FIRM, Washington, D.C.,
for Appellant. Lynne A. Battaglia, United States Attorney, Hollis
Raphael Weisman, Assistant United States Attorney, Greenbelt,
Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Robert W. Petty appeals from his conviction and sentence imposed for violation of 18 U.S.C.A. § 922(g)(1) (West Supp. 1998). On appeal, Petty contends that the district court erred in denying his motion for judgment of acquittal on the basis that the government failed to establish the interstate nexus element of the offense; erred in permitting the government to introduce evidence in violation of Fed. R. Crim. P. 16; erred in allowing the government to introduce the testimony of an expert witness contrary to Fed. R. Evid. 702; and erred in calculating his criminal history category. Petty has also filed a motion to file a pro se supplemental brief, asserting that counsel was ineffective in his representation of Petty and that the district court erred in refusing to give an instruction on "mere presence," failing to answer the jury's question about a photograph in evidence, and denying Petty's request to file a notice of insanity defense out of time. We grant Petty's motion to file a pro se supplemental brief and have considered the issues raised by Petty. Finding no abuse of discretion and no error, we affirm Petty's conviction and sentence.

I.

In the early morning hours of November 23, 1996, four individuals left a bar in Clinton, Maryland. As they drove toward the home of the driver, Mike Jamison, they noticed that they were being followed by another vehicle. Jamison pulled the car off the traveled lane of the road to allow the other vehicle to pass. When the other vehicle also pulled off the road behind them, Jamison drove the car back onto the road.

After traveling a short distance up the road, Jamison pulled into the parking lot of a 7-11 convenience store. The other vehicle, a Jeep, followed and stopped behind the car driven by Jamison. David Berkley, a Capitol Police officer, got out of the back seat of the car driven by Jamison, walked up to the vehicle behind them, and asked the driver what the problem was. The driver and sole occupant of the following vehicle asked a question about someone named "Theresa." When Berkley did not promptly reply, the driver of the Jeep reached into the

car, pointed a short-barreled shotgun at Berkley, and stated that he was not joking.

Coincidentally, Prince George's County Police Officer Russell Gilbert was sitting in a marked cruiser parked in the 7-11 parking lot doing paperwork. Officer Gilbert witnessed the incident. He drew his service weapon and ordered the driver of the Jeep to drop his weapon. The driver of the Jeep glanced over at Gilbert, tossed the shotgun into his vehicle, and drove off. Officer Gilbert got into his cruiser and pursued the Jeep. Although he lost sight of the Jeep for a moment, he spotted it driving through a church parking lot across the street from the 7-11. The Jeep was driven to the rear of the church, where the occupant got out and ran. Officer Gilbert followed in his cruiser and caught the occupant when he tripped and fell--not too far from the Jeep. This person was later identified as Robert Petty. A sawed-off shotgun was found in the middle of a nearby road. The gun was not loaded, and the hammer was cocked. Officer Gilbert testified that the person he arrested near the church parking lot, Robert Petty, was the same person who had been driving the Jeep and who pointed the gun at Berkley in the 7-11 parking lot.

The government presented testimony from Special Agent Tom Love of the Alcohol, Tobacco, and Firearms Department. Agent Love testified that he had training in identifying the interstate nexus of firearms. His training and experience included examination and research on firearms, including tool markings, proof marks, and origin. He had previously testified in federal court as an expert in interstate nexus at least six times. Love testified that he was familiar with Harrington and Richardson, the manufacturer of the shotgun recovered following Petty's arrest, and, during voir dire, testified that Harrington and Richardson was located in Massachusetts and never produced a shotgun in Maryland.

Following the presentation of a stipulation as to Petty's prior felony conviction, the government rested its case. Petty moved for judgment of acquittal. The district court denied this motion and denied Petty's renewed motion following the close of the evidence. Petty subsequently moved for a new trial in which he argued that the district court erred in permitting the testimony of Agent Love under Rule 16 and Rule 702, and, absent his testimony, the evidence was insufficient

3

to support Petty's conviction. Following a hearing on this motion, the district court denied a new trial.

II.

Petty first argues that the district court erred in denying his motion for judgment of acquittal because the government failed to establish the interstate nexus element of the offense. To support a conviction under 18 U.S.C.A. § 922(g)(1), the government must prove that the defendant previously had been convicted of a felony and had "possess[ed] in or affecting commerce, any firearm." Id. In Scarborough v. United States, 431 U.S. 563, 575 (1977), the Supreme Court concluded that the government had to prove that the defendant possessed a firearm that at some time had traveled in interstate commerce. Petty contends that Agent Love--the only witness to address the interstate nexus element--testified that the weapon recovered by Officer Gilbert was a Harrington and Richardson Topper Model 490 shotgun that was manufactured in 1972. He also testified that Harrington and Richardson currently manufactures weapons in Massachusetts. Petty asserts that this testimony does not show that in 1972, Harrington and Richardson did not manufacture firearms in Maryland. However, in addition to the statements recited by Petty, Agent Love also testified that "there was never a Harrington and Richardson shotgun ever produced in the State of Maryland." (J.A. at 173). We find that Agent Love's statements, in conjunction and viewed in the light most favorable to the government, provide sufficient evidence to prove beyond a reasonable doubt, that the firearm at some time had traveled in interstate commerce. See United States v. Tresvant , 677 F.2d 1018, 1021 (4th Cir. 1982).

Relying on United States v. Lopez, 514 U.S. 549 (1995), Petty also contends that the statute under which he was convicted is unconstitutional under the Commerce Clause because the regulated activity does not substantially affect interstate commerce. We have previously upheld § 922(g) against such a challenge and decline to revisit the issue in this case. See United States v. Wells , 98 F.3d 808, 810-11 (4th Cir. 1996).

III.

Petty next contends that the district court abused its discretion in allowing Agent Love to testify as an expert concerning the interstate

4

character of the firearm. During Agent Love's testimony, the defendant approached the bench and claimed that the expert testimony report was never disclosed to him as required by Rule 16 and that the report proffered by the government was not Agent Love's report. The district court concluded that the government's failure to fully comply with the rule was inadvertent and that the government had made enough of the information available to the defense such that Agent Love's testimony was admissible. However, the court recessed for a long lunch to allow Petty sufficient time to review the report.

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure requires the government, upon a defendant's request, to provide the defendant with "a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary . . . shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." Fed. R. Crim. P. 16(a)(1)(E). Petty contends that the government did not identify Agent Love as its proposed expert witness until five days before trial and failed to disclose to him the report upon which Agent Love's testimony was based.

To the extent that the government failed to provide Petty with the name, qualifications, and report of Agent Love, he has failed to show how he was prejudiced. See United States v. Figueroa-Lopez, 125 F.3d 1241, 1247 (9th Cir. 1997) (holding that defendant "must demonstrate prejudice to substantial rights to justify reversal for violations of discovery rules"), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3748 (U.S. May 18, 1998) (No. 97-8682). Petty was informed prior to trial that Special Agent Chris Trainor would testify regarding the interstate nexus element of the offense. When the government learned that its original expert witness would be testifying elsewhere and was unable to be in court for Petty's trial, the government notified Petty that Agent Love would testify. Petty had sufficient notice of the substance of the testimony and the basis for the opinion rendered. Also, the type of testimony elicited from Agent Love is not on such a complex subject matter as to require lengthy preparation or consultation with another expert. We find no prejudice to Petty by the lack of prior notice.

5

The Federal Rules of Criminal Procedure provide a district court with discretion in determining the proper remedy for a discovery violation. See Fed. R. Crim. P. 16(d)(2). Accordingly, a trial court's decision as to the appropriate remedy may only be reversed for abuse of discretion. See United States v. Ford, 986 F.2d 57, 59 (4th Cir. 1993). We find no abuse of discretion by the district court in remedying the alleged Rule 16 violation by recessing for lunch to allow Petty to review the report of Agent Love.

Further, we find that the district court did not abuse its discretion in determining that Agent Love was properly qualified as an expert in the field of identifying the interstate nexus of firearms. See United States v. Dorsey, 45 F.3d 809, 812 (4th Cir. 1995); United States v. Barsanti, 943 F.2d 428, 432 (4th Cir. 1991). Rule 702 of the Federal Rules of Evidence authorizes the presentation of expert opinion testimony in cases in which "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. While the district court acknowledged that Agent Love's testimony was not "expert" testimony in the sense of a scientist rendering an opinion about a technical or scientific matter, the place of manufacture of firearms is not the type of information that is within the common knowledge of jurors. Given Agent Love's specialized training, experience, and knowledge in the identification of the interstate character of firearms, we find no abuse of discretion in the district court's admission of Agent Love's testimony concerning where Harrington and Richardson manufactured the shotgun at issue in this case.

IV.

Petty also argues that the district court erred in calculating his criminal history category. He contends that three of his previous convictions should have been considered related under U.S. Sentencing Guidelines Manual § 4A1.2(a)(2) (1996). The three convictions resulted from conduct occurring on the same date and were consolidated for sentencing. Even if these convictions were considered related, Petty's criminal history category would be unaffected--both because his number of criminal history points would still exceed the 13 points necessary to place him in category VI, and because he qualified as an armed career criminal, which also places him in category

6

VI. <u>See</u> USSG § 4B1.4(c). Therefore, we decline to address whether or not the convictions were related. Moreover, because it does not conclusively appear from the record that counsel provided ineffective assistance by failing to raise this claim at sentencing, we decline to address this claim as well. <u>See United States v. Ford</u>, 88 F.3d 1350, 1363 (4th Cir. 1996). Petty's claim that counsel rendered ineffective assistance should be raised, if at all, in the district court by a motion under 28 U.S.C.A. § 2255 (West 1994 & Supp. 1998).

V.

In his pro se supplemental brief, Petty raises the additional claims of ineffective assistance of counsel, asserting that counsel did not investigate the government's witnesses, did not present witnesses, did not present evidence that Petty's vehicle was brown when the vehicle involved in the incident was described as red or bright red, did not present evidence that Petty had short hair on the night of his arrest while the person who pointed the shotgun was described as having shoulder-length hair, did not object to Officer Gilbert's use of the phrase "on-scene arrest," did not object to the district court's refusal to answer the jury question concerning a photograph that was admitted into evidence, and did not file a timely notice of insanity defense or request a downward departure at sentencing based on Petty's prior treatment by a psychologist and his use of alcohol and drugs from an early age. Because counsel's ineffectiveness does not conclusively appear on the record, Petty's claims are more appropriately addressed in a § 2255 motion filed in the district court. <u>See Ford</u>, 88 F.3d at 1363; <u>United States v. Fisher</u>, 477 F.2d 300, 302 (4th Cir. 1973).

VI.

Petty also asserts that the district court erred in refusing to instruct the jury that mere presence at the scene of a crime is insufficient to find that the defendant committed the crime. The requested instruction is typically given in conspiracy cases or cases in which the defendant may be culpable as an aider and abettor. <u>See United States v. Love</u>, 767 F.2d 1052, 1058-59 (4th Cir. 1985). In denying the instruction, the district court noted that there was no evidence of an aider or abettor in this case and that the issue was whether the person arrested was the person who wielded the shotgun in the parking lot. Rather

7

than giving the "mere presence" instruction, the district court opted to amplify its instructions on identification and the reliability of the identification. We find that the district court correctly determined that the issue was not one of Petty's being present and his being the suspect, but rather an issue of identification: was the person arrested the same person who pointed the shotgun? Therefore, we find no error in the district court's denial of Petty's request for an instruction on "mere presence."

VII.

Petty also argues that the district court erred in refusing to answer the jury question as to when a photograph in evidence was taken. The challenged photograph pictured Petty with short hair, and the person who committed the crime was described by one witness as having shoulder-length hair. The court proposed responding to the jury that the court could not give any further information about the photo, and the jury would have to rely on their collective recollection of the testimony. Neither party objected to this proposed response. The testimony concerning the photograph came from Officer Gilbert, the arresting officer. He testified that the photograph was of Robert Petty and that it pictured him the way he looked the night he was arrested. Considering that the witness who described the person with the shotgun as having shoulder-length hair also testified that he did not get a good look at the person and that the jury ultimately had to determine which of the two descriptions was accurate, we find no plain error in the district court's refusal to elaborate on the origins and history of the photograph. See United States v. Olano, 507 U.S. 725, 732 (1993) (to reverse for plain error, this court must (1) identify an error; (2) which is plain; (3) which affects substantial rights; and (4) which seriously affects the fairness, integrity or public reputation of judicial proceedings).

VIII.

The final issue Petty raises in his pro se brief is that the district court erred in denying his motion to allow the late filing of his notice of an insanity defense. Petty's trial was scheduled to begin on September 23, 1997. On September 12, 1997, Petty's counsel filed a "Notice of Insanity Defense" and request to allow late filing.

8

Rule 12.2 of the Federal Rules of Criminal Procedure requires the defendant to give notice of his intent to raise an insanity defense within the time provided for filing pretrial motions. The failure to timely give notice precludes the defendant from asserting insanity as a defense, unless the court, for cause shown, allows the late filing or grants the parties additional time to prepare for trial. See Fed. R. Civ. P. 12.2(a). To establish cause for the late filing of a Rule 12.2 notice, the defendant must provide both an explanation for the late filing and some evidence that the asserted defense may prevail. See Government of Virgin Islands v. Knight, 989 F.2d 619, 628 (3d Cir. 1993); United States v. Duggan, 743 F.2d 59, 80 (2d Cir. 1984).

As an explanation for the late filing, counsel stated that he had just received a letter from a doctor concerning Petty's mental status on the night of the incident. This letter, dated August 4, 1997, was written in response to a letter from Petty in which Petty described his symptoms. No medical or psychiatric examination or assessment was performed. Counsel did not explain why he waited until July 30, 1997, to contact this doctor, nor why he delayed from early August--the date of the letter--until mid-September to file the notice of insanity defense. We find that Petty failed to show cause justifying the late filing; therefore, the district court did not abuse its discretion in denying Petty's request to file his notice of insanity defense out of time.

IX.

In conclusion, we find no error or abuse of discretion in the district court's evidentiary rulings or jury instructions and no error in the denial of Petty's motion for a new trial or in the determination of Petty's criminal history category. Therefore, we affirm Petty's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED