**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4408

UNITED STATES OF AMERICA,

　　　　　Plaintiff − Appellee,

　　v.

RAYMOND BULLETTE, III, a/k/a Scrap,

　　　　　Defendant − Appellant.


Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Roger W. Titus, Senior District Judge. (8:13−cr−00525−RWT−3)


Argued: March 24, 2017　　　　　　　　　　　　Decided: April 20, 2017


Before DUNCAN, KEENAN, and THACKER, Circuit Judges.


Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Keenan and Judge Thacker joined.


**ARGUED:** Jaime Ann Santos, GOODWIN PROCTER, LLP, Washington, D.C., for Appellant. Michael Thomas Packard, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Michael Lawlor, LAWLOR & ENGLERT, LLC, Greenbelt, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, Leah Jo Bressack, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

DUNCAN, Circuit Judge:

This appeal arises out of a warrantless vehicle search that the Drug Enforcement Agency ("DEA") conducted at an active crime scene. Defendant-Appellant Raymond Bullette, III, appeals the district court's denial of his motion to suppress. For the reasons that follow, we affirm.

I.

A.

In 2012, DEA Special Agent Brian Willey ("Agent Willey") and his team began investigating a Phencyclidine ("PCP") drug manufacturing and distribution conspiracy they believed to be based in California. In February 2013, local law enforcement responded to a call about a house fire in the California desert, near Lake Los Angeles. Investigation of the fire revealed chemical containers of various sizes used in PCP manufacturing. Local law enforcement asked the DEA to investigate whether the property was in fact a PCP lab.

During the investigation, neighbors told Agent Willey's team that they had "been smelling strong chemical odors in the air for approximately two years before" the fire. J.A. 96. Law enforcement asked the neighbors to call if they observed any vehicles or strange activity on the property.

A few months later, on the evening of May 31, 2013, the local sheriff's department responded to a neighbor's report of suspicious activity on the property. Upon arriving at approximately 1:00 a.m., the deputies saw three vehicles parked by a plywood

2

shed in an open field--a Pontiac sedan, a minivan, and a Toyota pick-up truck. Law enforcement found all the vehicles unlocked, and the Toyota's doors open. The deputies conducted a safety sweep around the area and found no one on the property. Agent Willey arrived at the scene around 3:00 a.m.

The deputies and Agent Willey observed evidence that suggested someone had been manufacturing PCP on the property: Near the vehicles and shed they found large drums containing chemicals used in the PCP manufacturing process and garbage cans containing PCC crystals (a precursor to PCP). Agent Willey testified that, based on his experience with the DEA's clandestine laboratory team, this scene was consistent with a PCP laboratory. It also appeared that someone had left the property hurriedly: Law enforcement found recently eaten food on top of the Pontiac's closed trunk, abandoned personal items scattered around the property, and fresh footprints leading away from the property. Based on this information, law enforcement declared the area a crime scene.

Agent Willey and his team searched all three vehicles. The Pontiac--the only vehicle at issue here--had no license plate and no visible registration tag.[1] On top of the Pontiac's trunk law enforcement found partially eaten food and a receipt for food purchased the previous day in Los Angeles, California. From outside the Pontiac, law enforcement could plainly see that it contained a backpack, amber liquid in bottles that Agent Willey believed to be finished PCP (which later turned out to be Pine-Sol), cellphones, and various documents. Agent Willey testified that his team searched the

---

[1] The Pontiac was located between the other two vehicles. Law enforcement later determined that the Pontiac was registered to a Damian Robinson.

vehicles because (1) standard DEA practice was to impound and inventory vehicles when no one was present to claim them, (2) he had safety concerns related to possible explosives in the vehicles and the vehicles' proximity to explosive materials on the property, and (3) he wanted to identify the registered owner(s) of the vehicles. Agent Willey opened the Pontiac's doors to conduct a search at around 6:00 a.m.; law enforcement never obtained a warrant to search the Pontiac.

Several pieces of evidence inside the Pontiac linked Defendant to the vehicle and the PCP conspiracy. The deputies found an assortment of documents containing Defendant's name and address inside the Pontiac's unlocked interior and glove compartment. Agent Willey and his team also found multiple cellphones inside the Pontiac. DEA agents later obtained a warrant for three cellphones that were still operational. A search of one of the cellphones found in the passenger's seat provided evidence suggesting that Defendant had used that cellphone to arrange drug deliveries.

### B.

A grand jury indicted Defendant for conspiracy to possess with intent to distribute a controlled dangerous substance in violation of 21 U.S.C. § 846. Defendant filed a motion to suppress the evidence obtained from the Pontiac on the ground that Agent Willey and his team should have obtained a warrant between the time when Agent Willey arrived on the scene--3:00 a.m.--and when the search began--around 6:00 a.m. Assuming, without finding, that Defendant had standing to contest the search, the district court denied Defendant's motion to suppress. It concluded that the warrantless search was reasonable because (1) it was necessary for officer safety, and (2) law enforcement

4

would have inevitably discovered the contents of the Pontiac after impounding it and conducting an inventory search. A jury convicted Defendant after a four-day trial, and Defendant timely appealed.

## II.

On appeal Defendant argues that no exception to the warrant requirement justified the search at issue. Defendant further maintains that the district court erred in finding that law enforcement would have inevitably discovered the evidence at issue because the government did not submit evidence of a standard DEA impoundment-and-inventory procedure, and Agent Willey did not testify about the specifics of such a procedure.[2]

The government counters that an officer-safety-based exigent-circumstances exception and the automobile exception justified the warrantless search because law enforcement had probable cause to believe that the Pontiac contained dangerous material related to PCP manufacturing. The government also claims that the district court correctly applied the inevitable-discovery doctrine because, based on Agent Willey's

---

[2] Defendant also argues that the district court should have required the government to prove his prior convictions to a jury beyond a reasonable doubt before subjecting him to a mandatory sentence under 21 U.S.C. § 841(b)(1)(A). However, as Defendant conceded at oral argument, Supreme Court precedent forecloses this challenge. *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27, 239–47 (1998); *see also Alleyne v. United States*, 133 S. Ct. 2151, 2160 n.1 (2013). Although the Supreme Court has expressed doubt about the continuing validity of *Almendarez-Torres*, it "remains good law, and we may not disregard it unless and until the Supreme Court holds to the contrary." *United States v. McDowell*, 745 F.3d 115, 124 (4th Cir. 2014).

testimony concerning DEA standard practice, it was clear that law enforcement would have impounded the Pontiac and inventoried all of its contents.

"In considering the appeal of a denial of a motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error." *United States v. Slocumb*, 804 F.3d 677, 681 (4th Cir. 2015). "We further construe the evidence in the light most favorable to the government--the prevailing party below." *Id.*

For the reasons that follow, we affirm on the basis of the inevitable-discovery doctrine. We therefore do not reach the question of whether the automobile exception or an exigent-circumstances-based exception to the warrant requirement applies.

A.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment's exclusionary rule normally prevents the government from using evidence obtained as a result of an illegal search against the victim of that search. *See Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). However, as both the Supreme Court and this court have repeatedly explained, the exclusionary rule is subject to certain exceptions. *Id.*; *Nix v. Williams*, 467 U.S. 431, 441–42 (1984); *United States v. Hill*, 849 F.3d 195, 200 (4th Cir. 2017).

The inevitable-discovery doctrine constitutes one such exception and allows the government to use information obtained from an otherwise unreasonable search if it can establish by a preponderance of the evidence that law enforcement would have "ultimately or inevitably" discovered the evidence by "lawful means." *Nix*, 467 U.S. at

6

444; *see also Strieff*, 136 S. Ct. at 2061. "Lawful means" include an inevitable search falling within an exception to the warrant requirement, such as an inventory search, that would have inevitably uncovered the evidence in question. *United States v. Allen*, 159 F.3d 832, 841 (4th Cir. 1998). Whether law enforcement would have inevitably discovered the evidence by lawful means is a question of fact, and we thus accord great deference to the district court's findings. *Id.* at 838–39; *see also Murray v. United States*, 487 U.S. 533, 543–44 (1988).

B.

An inventory search of an automobile is lawful (1) where the circumstances reasonably justified seizure or impoundment, and (2) law enforcement conducts the inventory search according to routine and standard procedures designed to secure the vehicle or its contents. *See Colorado v. Bertine*, 479 U.S. 367, 371–76 (1987); *United States v. Brown*, 787 F.2d 929, 931–32 & n.3 (4th Cir. 1986). Reviewing the evidence in the light most favorable to the government, we agree that the inevitable-discovery doctrine applies here on this basis.

1.

Impoundment constitutes a reasonable course of action when the owner of a vehicle abandons it, or law enforcement cannot identify the owner. *South Dakota v. Opperman*, 428 U.S. 364, 375 (1976); *Brown*, 787 F.2d at 932–33. This remains true even if law enforcement has alternatives to impounding the vehicle. *See Brown*, 787 F.2d at 932–33.

The circumstances confronting the DEA agents at the crime scene support a finding that impoundment was a reasonable course of action. *See Opperman*, 428 U.S. at 375; *Brown*, 787 F.2d at 932–33. Here, law enforcement encountered the Pontiac--with no visible license plate or registration--in what appeared to be a state of recent abandonment, and they could not identify the owner of the Pontiac. Agent Willey's testimony substantiated the finding that DEA standard practice called for impoundment of the Pontiac. In addition, safety concerns added to the reasonableness of impoundment. *See United States v. Ford*, 986 F.2d 57, 60 (4th Cir. 1993). Agent Willey could plainly see two bottles through the unlocked Pontiac's window, which, in his professional opinion, could have contained PCP. Explosive materials used in PCP manufacturing surrounded the Pontiac, and it was reasonable to conclude that drug manufacturers did not carry those materials to the property on foot. Furthermore, that same property had caught fire before because of similar explosives. These circumstances reasonably justified impoundment.

2.

The government need not provide a written inventory policy to prove that a law enforcement agency conducts its inventory searches according to routine and standard procedures so long as the district court has sufficient evidence to ensure that the practice conforms to our precedent. *See Ford*, 986 F.2d at 60. We have held that an inventory search of *all* of a vehicle's contents is reasonable if the agent who conducted the search followed a practice to do so for all impounded vehicles. *See Brown*, 787 F.2d at 932–33.

Agent Willey provided sufficient testimony for the district court to find that the DEA had a standard inventory procedure pertaining to all impounded vehicles and would have inevitably discovered the challenged evidence by conducting an inventory search according to routine and standard DEA procedures. *See Ford*, 986 F.2d at 60. Even the most circumscribed inventory procedures call for an inventory of unsecured items located in an unlocked vehicle's interior. *See Opperman*, 428 U.S. at 375–76; *United States v. Matthews*, 591 F.3d 230, 237–38 (4th Cir. 2009). Such basic procedures would have uncovered the incriminating cellphone found on the passenger's seat and the documents strewn throughout the unlocked Pontiac's interior.[3] As for documents found in the glove compartment, we note that both the Supreme Court and lower federal courts have "recognized that standard inventories often include an examination of the glove compartment, since it is a customary place for documents of ownership and registration." *Opperman*, 428 U.S. at 372. Here, although Agent Willey did not guide the district court step-by-step through the DEA's impoundment-and-inventory procedure, he did explain that identifying the registered owner of the vehicle was part of standard DEA practice. The district court did not clearly err in finding that the DEA would routinely search a glove compartment under these circumstances. *See Opperman*, 428 U.S. at 376 & n.10; *see also United States v. Banks*, 482 F.3d 733, 740 (4th Cir. 2007).

---

[3] The DEA also correctly sought a warrant for the cellphone before searching its contents. *Riley v. California*, 134 S. Ct. 2473, 2485 (2014); *see also United States v. Arellano*, 410 F. App'x 603, 606–07 (4th Cir. 2011) (per curiam) (unpublished) (holding that the district court did not err in applying inevitable-discovery doctrine to evidence found on a cellphone seized from a warrantless vehicle search for which law enforcement obtained a warrant before searching).

9

## III.

In short, we have never required the government to provide a written impoundment-and-inventory policy or elicit step-by-step testimony concerning such a policy to meet its burden under the inevitable-discovery doctrine. The government meets its burden and this court can affirm on inevitable-discovery grounds if the district court can assess the inevitability and reasonableness of a hypothetical inventory search from testimony provided by a law-enforcement official--such as DEA Agent Willey here. *See Ford*, 986 F.2d at 60; *United States v. Mancera-Londono*, 912 F.2d 373, 375–76 (9th Cir. 1990) (crediting DEA agent's testimony about unwritten procedures the DEA follows for impounding and inventorying automobiles in an inevitable-discovery case); *see also United States v. Agofsky*, 20 F.3d 866, 872–73 (8th Cir. 1994); *United States v. Frank*, 864 F.2d 992, 1002–05 (3d Cir. 1988); *United States v. Okiyama*, No. 93-10569, 1994 WL 198632, at *1 & n.1 (9th Cir. May 19, 1994) (unpublished). As explained above, the government has met its burden in this case. Therefore, we affirm the district court's denial of Defendant's motion to suppress.

*AFFIRMED*