**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4383**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DARRYL MARSHALL SEAY,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Raymond A. Jackson, District Judge.  (4:17-cr-00100-RAJ-LRL-1)

Argued:  September 20, 2019                    Decided:  December 4, 2019
                           Amended:  December 4, 2019

Before NIEMEYER, KEENAN, and RUSHING, Circuit Judges.

Affirmed by published opinion.  Judge Rushing wrote the opinion, in which Judge Niemeyer and Judge Keenan joined.

**ARGUED:** Caroline Swift Platt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Daniel Taylor Young, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Andrew W. Grindrod, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Conor Mulroe, Special Assistant United States Attorney, Alexander B. Gottfried, Special Assistant United States Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; G. Zachary Terwilliger, United States Attorney, OFFICE

OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

———————

RUSHING, Circuit Judge:

Defendant Darryl Seay was convicted of possession of a firearm by a felon. On appeal, he asserts that the district court erred when it denied his motion to suppress the firearm as the fruit of an unconstitutional search because police inevitably would have discovered it. For the reasons that follow, we affirm.

I.

A.

On October 27, 2016, police responded to a request from staff at the SpringHill Suites in Hampton, Virginia to evict a difficult customer, Devin Bracey. The officers knocked on Bracey's hotel room door and, after a few minutes of delay, she opened it. As Bracey opened the door, Seay exited the bathroom. After the officers informed them that they had been asked to leave, Bracey and Seay packed their belongings and left the room. Seay carried a clear plastic bag as he left. The officers searched the hotel room, found ammunition in the toilet bowl and drug paraphernalia wrapped in women's underwear, and ordered Bracey and Seay back into the room.

Officer Angela DiPentima separated the suspects to interview them. After Bracey's interview, Officer DiPentima and Officer Daniel Lucy conferred and determined they had probable cause to arrest Bracey on drug charges. They discussed the possibility of arresting Seay for possession of ammunition as a felon and decided they should interview him. Officer Lucy also wanted to "determine what property was whose" and to "search [Bracey's] property prior to taking her to lockup." J.A. 112.

3

While Seay was being interviewed, Officer Lucy searched Bracey's belongings. As footage from the officers' body cameras shows, Officer Lucy first searched a handbag, which Bracey admitted was hers. After searching the handbag, Officer Lucy gestured to the clear plastic bag and asked, "whose stuff is this right here?" J.A. 189 (Video Lucy 3) at 25:45–25:50. As Bracey picked up the plastic bag, she responded, "this stuff is our stuff." J.A. 117; J.A. 189 (Video Lucy 3) at 25:45–25:50. Officer Lucy again asked who the plastic bag belonged to, and Bracey again responded that it was "our stuff." J.A. 189 (Video Lucy 3) at 25:50–26:23. Officer Lucy then searched the plastic bag and discovered a silver handgun wrapped in a red jacket.

## B.

A grand jury in the Eastern District of Virginia indicted Seay on one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the firearm and statements he made after his arrest.

The district court held a hearing at which Officers DiPentima and Lucy testified. As relevant here, Officer Lucy testified that it was standard practice in the Hampton Police Department to search and inventory an arrestee's property before taking her to jail. He specifically testified that, because Bracey had identified the clear plastic bag as "our stuff," he would have taken the bag "with her to lockup" and "would have searched through the items prior to lockup." J.A. 117–118. Officer DiPentima similarly testified that, pursuant to police department policy, Bracey's property would have been searched and inventoried before or at lockup.

4

If, hypothetically, Bracey had requested that the plastic bag be given to Seay instead of accompanying her to jail, Officer Lucy testified that the bag would have been inventoried before being released to Seay. According to Officer Lucy, when an arrestee requested that property be released to another individual, standard practice was to complete a field interview card for that individual and document the property being released. Officer Lucy explained that when officers wore body cameras (as they did in this case), they typically identified each item on camera and confirmed that the arrestee wanted her companion to take that item, but whether to use this procedure was left to the officer's discretion.

The district court granted Seay's motion to suppress the statements he made to officers after the firearm was discovered, because the court concluded that, although officers had probable cause to arrest Bracey, the search of the plastic bag was not a lawful search incident to her arrest. The court denied Seay's motion to suppress the firearm, however, concluding that officers inevitably would have discovered it during an inventory search of the plastic bag. Seay pleaded guilty but reserved the right to appeal the denial of his motion to suppress.

II.

On appeal from a district court's ruling on a motion to suppress, we review legal conclusions de novo and factual findings for clear error. *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005). Whether law enforcement inevitably would have discovered evidence by lawful means is "a question of fact" on which we "accord great deference" to the district court. *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017).

5

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, the government is prohibited from using evidence discovered in an unlawful search against the individual whose constitutional right was violated. *United States v. Doyle*, 650 F.3d 460, 466 (4th Cir. 2011). However, this rule is subject to certain exceptions. *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). One such exception is the inevitable discovery doctrine, which allows the government to use evidence gathered in an otherwise unreasonable search if it can prove by a preponderance of the evidence "that law enforcement would have 'ultimately or inevitably' discovered the evidence by 'lawful means.'" *Bullette*, 854 F.3d at 265 (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). "Lawful means" include searches that fall into an exception to the warrant requirement, "such as an inventory search[] that would have inevitably uncovered the evidence in question." *Id.*

"For the inventory search exception to apply, the search must have 'be[en] conducted according to standardized criteria,' such as a uniform police department policy[,] and performed in good faith." *United States v. Matthews*, 591 F.3d 230, 235 (4th Cir. 2009) (quoting *Colorado v. Bertine*, 479 U.S. 367, 374 n.6 (1987)). The government may demonstrate standardized criteria "'by reference to either written rules and regulations *or* testimony regarding standard practices.'" *United States v. Clarke*, 842 F.3d 288, 294 (4th Cir. 2016) (quoting *Matthews*, 591 F.3d at 235).

The evidence presented to the district court supported a finding that the firearm inevitably would have been discovered during an inventory search of the plastic bag.

6

Officers Lucy and DiPentima testified that it was standard procedure to inventory an arrestee's belongings before taking her to jail. The officers had probable cause to arrest Bracey and were preparing to arrest her. Officer Lucy testified that Bracey had identified the plastic bag as "our stuff" and that the officers would have inventoried Bracey's belongings, including the contents of the plastic bag, pursuant to the standard procedure. The officers' testimony explaining the inventory procedure was sufficient to satisfy our precedent; the government was not required to produce a written policy. *See Bullette*, 854 F.3d at 266; *United States v. Ford*, 986 F.2d 57, 60 (4th Cir. 1993).

Seay argues that, because Officer Lucy testified that part of the inventory procedure was discretionary, the government could not demonstrate that an inventory would have been conducted according to standardized criteria or that such a search was inevitable. Seay is correct that an inventory search policy must restrict discretion in order to tether inventory searches to their permissible purposes and prevent them from becoming "a ruse for general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). But police discretion is not entirely forbidden; for example, an inventory search policy "may leave the inspecting officer 'sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself.'" *United States v. Banks*, 482 F.3d 733, 739 (4th Cir. 2007) (quoting *Wells*, 495 U.S. at 4).

Officer Lucy testified that, if an arrestee requested to send property with a companion rather than take it to jail, officers would document each item being released. As he explained, this practice was intended to prevent allegations that officers stole seized

7

property and to prevent contraband from going to jail. Officer Lucy testified that it was "up to officer discretion" whether to verbally identify each item in a container on camera and confirm with the arrestee that each item would be sent with her companion. *See Bullette*, 854 F.3d at 265 ("We . . . construe the evidence in the light most favorable to the government—the prevailing party below."). This limited discretion "based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment." *Wells*, 495 U.S. at 4; *see Bertine*, 479 U.S. at 372 ("[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.").

Nor does this discretion undermine the inevitability of the inventory search and discovery of the firearm. Indeed, Seay concedes that the police "inevitably would have" inventoried Bracey's belongings. Reply Br. 11. Whether or not the officers would have conducted the inventory by identifying each item on camera does not change the analysis. Bracey could not leave the plastic bag behind because she had been evicted from the hotel. And if she had asked to send the bag with Seay instead of bringing it to lockup, Officer Lucy testified that the contents would have been documented before being released. Based on the evidence, the district court easily concluded that the plastic bag would have been inventoried either when Bracey was taken to lockup or before being released to Seay.

Seay also argues that the plastic bag belonged to him, not Bracey, and the police could not, and would not, have conducted an inventory search of his property as a non-arrestee. Although Seay carried the bag out of the hotel room when he and Bracey were evicted, during the subsequent search Bracey twice told Officer Lucy that the bag was "our

stuff," as the video evidence shows and Officer Lucy testified. Seay does not contend that a policy of searching jointly-owned property would be illegal. Although Seay argues that Bracey could have clarified during an inventory search that the plastic bag actually belonged to Seay, that argument is speculative and contrary to the evidence. The district court did not clearly err in finding that discovery of the firearm during an inventory search of Bracey's property was inevitable.

For these reasons, we affirm the district court's denial of Seay's motion to suppress the firearm. Because we affirm on this basis, we decline to address the government's alternative argument that the firearm was discovered during a valid search incident to arrest.

*AFFIRMED*