**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-4195**

_____

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JOHN HENRY MOORE,

        Defendant - Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge, and Frank D. Whitney, Senior District Judge. (3:19-cv-00086-FDW-SCR)

_____

Argued: December 11, 2025                    Decided: March 3, 2026

_____

Before KING, HARRIS, and RICHARDSON, Circuit Judges.

_____

Remanded with instructions by unpublished opinion. Judge Harris wrote the opinion, in which Judge King and Judge Richardson joined.

_____

**ARGUED:** Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Wesley P. Page, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Lawrence J. Cameron, Acting

United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

John Henry Moore was convicted by a jury of charges arising from two armed robberies of retail stores. On appeal, he raises multiple challenges to his convictions and sentence. In this opinion, we address just one: Moore's argument that evidence police seized from his apartment during two searches on the day of his arrest should have been suppressed under the Fourth Amendment.

If Moore is right as to his Fourth Amendment claim, then he may be entitled to vacatur of his convictions on that ground alone. But the district court denied Moore's motion to suppress without conducting the evidentiary hearing necessary to assess disputes of fact material to Moore's claim. Accordingly, we remand to the district court with instructions to conduct such a hearing and reconsider Moore's motion.

## I.

### A.

On December 1, 2018, a man in a black hooded sweatshirt with a Nike insignia robbed a store in a Charlotte, North Carolina, shopping center while brandishing a gun. Nine days later, a man wearing what appeared to be the same black hoodie robbed a grocery store in the same shopping center, threatening to shoot the store's employees.

The police quickly identified John Henry Moore as a suspect. At around 6:30 or 7:00 a.m. on December 12, two days after the second robbery, a team of officers from the Charlotte-Mecklenburg Police Department ("CMPD") executed an arrest warrant for Moore at the apartment where he lived. The officers handcuffed Moore at his front door

3

and then conducted a "protective sweep" of the apartment, looking for anyone who could pose a danger to the arresting officers. *See Maryland v. Buie*, 494 U.S. 325, 334–36 (1990) (explaining that the Fourth Amendment permits a "protective sweep" of a suspect's home incident to arrest, limited to a "cursory inspection of those spaces where a person may be found"). After establishing that nobody else was on the premises, the officers brought Moore back inside his apartment.

At this point, the parties' accounts diverge. According to Moore, the police turned off their body-worn cameras and then, without a search warrant, proceeded to conduct a more intensive search of his apartment, exceeding the bounds of a lawful protective sweep. Moore alleges that while he was held in his living room, the police "searched through all [his] clothes that were in [his living room], searched [his] jewelry box," and "looked under [his] bean bag chair." J.A. 70. He also claims that he could hear officers in the back rooms "pull things off the shelves" and "open [his] safe," and – critically – that he saw officers "looking under the mattress where [a] gun was [later] allegedly found." *Id*.

The government disputes those allegations. It acknowledges that the officers who arrested Moore did not have a warrant to search Moore's apartment. But it denies that the officers went beyond the scope of a protective sweep to conduct the more invasive search described by Moore. The parties agree, however, that when the officers brought Moore to the police station after his arrest, they also brought three items – about $400 in cash, a cellphone, and a green jacket – seized from Moore's apartment.

The parties also agree that at 8:51 a.m., about two hours after Moore's arrest, a separate robbery unit of the CMPD applied for and obtained a search warrant for Moore's

4

apartment. The supporting affidavit noted that CMPD had arrested Moore at his apartment earlier that morning, but it did not mention any evidence observed or collected during the arrest. Moore alleges, however, that in deciding to *seek* the search warrant for his apartment, the robbery unit did rely on evidence and information gathered by the police during his arrest. According to Moore, the robbery unit was "not actively trying to get a search warrant" until it learned from the arresting officers what they had discovered at Moore's apartment. J.A. 79. The government appears to dispute that allegation, too.

The CMPD robbery unit executed the search warrant later that morning, at 9:45 a.m., and recovered items including a black Nike hoodie and a Glock handgun. The handgun was found on the floor under the mattress in the back bedroom of the apartment – the same mattress that, according to Moore, the arresting officers had examined earlier that day.

**B.**

In March 2019, a grand jury indicted Moore on two counts of armed robbery, one count of brandishing a firearm during a crime of violence, and one count of possession of a firearm by someone previously convicted of a felony. *See* 18 U.S.C. § 1951; *id.* § 924(c)(1)(A)(ii); *id.* §§ 922(g)(1), 924(e).

Before trial, Moore filed a *pro se* motion to suppress "any and all evidence seized by CMPD [] officers during a[] search incident to arrest of [his] apartment . . . and any and all evidence seized during the execution of the supposedly valid search warrant of [his] apartment on or about December 12, 2018." J.A. 65. According to Moore, all such evidence "was obtained in violation of [his] Fourth Amendment rights." *Id*.

5

The first search, Moore claimed, violated the Fourth Amendment because it exceeded the scope of a lawful protective sweep and was conducted without consent or a search warrant. As for the second search, Moore alleged that the CMPD robbery unit did not decide to seek a search warrant for his apartment until "after the[y] w[ere] given the illegally seized evidence from [his] apartment" by the arresting officers. J.A. 79. Thus, evidence discovered in that second, with-warrant search was discovered "only through exploitation" of the initial illegality. J.A. 66. It followed, Moore claimed, that all the evidence seized from his apartment – the cash, phone, and green jacket recovered during the first search, and the black Nike hoodie, handgun, and other items recovered during the second – should be suppressed under the Fourth Amendment. Moore also requested a hearing on the issue.

The government opposed Moore's motion. It denied Moore's factual allegation that the arresting officers had turned off their body-worn cameras and conducted a search of his apartment beyond the scope of a protective sweep. And even if the arresting officers had conducted an illegal search, the government argued in the alternative, the evidence seized from Moore's apartment would still be admissible: The second, with-warrant search was lawful because the magistrate judge who issued the warrant "never considered any illegally obtained information," and anything recovered during the first search "inevitably would have been discovered" during that second, lawful search. J.A. 86–87.

The district court denied Moore's motion. It did not hold an evidentiary hearing, and it did not resolve the parties' dispute as to whether the arresting officers had conducted a warrantless search that exceeded the scope of an authorized protective sweep. Instead, it

agreed with the government's alternative argument, holding that even if the arresting officers did conduct an illegal search, the record established that the challenged evidence was not the result, or "fruit," of that violation. *United States v. Moore*, 2022 WL 16579804, at *3 (W.D.N.C. Nov. 1, 2022).

After litigation of other pretrial issues,[1] the case proceeded to trial, and Moore was convicted by a jury on all counts. During the trial, the government introduced several pieces of evidence recovered during the two December 12 searches of Moore's apartment. Of note, the black hoodie seized during the second search matched the one seen in videos from both robberies, and it contained DNA that matched both Moore's sample and DNA found on an item at the scene of the first robbery. Meanwhile, the handgun discovered under Moore's mattress supported Moore's firearm convictions.

The district court sentenced Moore to three life sentences and a concurrent 84 months' imprisonment. Moore timely appealed. This court has jurisdiction over his appeal pursuant to 28 U.S.C. § 1291.

## II.

Although Moore raises several issues on appeal, we address here only his Fourth Amendment suppression claim. That claim, if resolved in Moore's favor, could be

---

[1] One of those pretrial issues, regarding Moore's motion to recuse the district judge presiding over his trial, came to this court twice before on unsuccessful petitions for a writ of mandamus. *See In re Moore*, 2022 WL 17716771 (4th Cir. Dec. 15, 2022); *In re Moore*, 955 F.3d 384 (4th Cir. 2020).

7

dispositive. But further factual development is required to decide the Fourth Amendment issue Moore presents and to assess its consequences for the rest of Moore's appeal. *See Andrews v. Baltimore City Police Dep't*, 8 F.4th 234, 235, 238–39 (4th Cir. 2020) (remanding Fourth Amendment claim for further factfinding).

Moore raised and sufficiently preserved his Fourth Amendment argument before the district court. We thus review the district court's legal conclusions *de novo*, any factual findings for clear error, and the district court's decision not to hold an evidentiary hearing for abuse of discretion. *United States v. Rusher*, 966 F.2d 868, 873 (4th Cir. 1992); *United States v. Bowman*, 106 F.4th 293, 300 (4th Cir. 2024). We also construe the evidence in the light most favorable to the government, as the prevailing party below. *United States v. Dire*, 680 F.3d 446, 473 (4th Cir. 2012). Under that standard, we agree with Moore that the district court abused its discretion by not holding an evidentiary hearing on Moore's motion to suppress.

At bottom, this issue turns on an exception to the Fourth Amendment exclusionary rule known as the "independent source" doctrine. That doctrine allows the admission of evidence first discovered in an unlawful search "if officers independently acquired it from a separate, independent source" – like a subsequent with-warrant search – that was "untainted by the illegal evidence-gathering activity." *Utah v. Strieff*, 579 U.S. 232, 238 (2016) (first quotation); *Murray v. United States*, 487 U.S. 533, 537–38 (1988) (second quotation). Moore alleges that the first search of his home, conducted by the arresting officers without a search warrant, was unlawful, and that the items retrieved from that search should have been excluded from trial. But his primary focus is on the critical

8

evidence seized in the second, with-warrant search, including the black Nike hoodie and the handgun. That evidence, he says, should have been suppressed as "fruit" of the first unlawful search, because the CMPD robbery unit decided to seek a search warrant only after the arresting officers shared what they had learned from their illegal search. *See Strieff*, 579 U.S. at 237. So to deny his motion to suppress, Moore contends, the district court had to find either that the first search was in fact lawful, or that the second search was truly "independent" of the first. But, says Moore, the district court found neither.

We agree. Moore's allegations "raised a question as to whether the [CMPD robbery unit's] decision to seek the warrant was prompted by what [the arresting officers] had seen" during their allegedly illegal search earlier that morning. *United States v. Hill*, 776 F.3d 243, 252 (4th Cir. 2015) (internal quotation marks omitted). If it was, then the second search was not a "genuinely independent source" of the evidence seized during that search, and that evidence – "[]tainted by the initial illegality" – is inadmissible. *Murray*, 487 U.S. at 537, 542. And to resolve this issue in the government's favor, well-settled precedent required the district court to make two distinct findings: first, that the allegedly unlawful initial search did not "affect[] the officer[s'] decision to seek the warrant" for the second search; and second, that it did not affect "the magistrate judge's decision to issue" the warrant. *Hill*, 776 F.3d at 251 (internal quotation marks omitted).

The district court here made only one of those findings. It did find, as the parties agree, that the first search had no effect on the magistrate judge's decision to issue a search warrant for the second. *Moore*, 2022 WL 16579804, at *3. And Moore does not dispute that this finding was supported by the record, which shows that the warrant application

9

before the magistrate judge did not mention or rely on any information obtained by the arresting officers earlier that morning. But the district court did not address whether the initial search affected *the officers'* (i.e., the robbery unit's) decision to seek a search warrant – despite the fact that Moore's motion to suppress put that question squarely at issue. That was error. Moore met his burden of presenting a factual dispute as to whether the second search was "genuinely independent" of the first. *Hill*, 776 F.3d at 251 (internal quotation marks omitted); *see Bowman*, 106 F.4th at 300. Under those circumstances, the district court could not assume the illegality of the first search and still deny Moore's motion to suppress without holding an evidentiary hearing and determining whether the first search affected the officers' subsequent decision to seek a search warrant. *Bowman*, 106 F.4th at 300.

The government offers two responses, both unavailing. First, the government contends that the district court properly relied on the inevitable discovery doctrine, rather than the independent source doctrine, to admit the challenged evidence. These are two closely related doctrines, and there is room for confusion. But while the independent source doctrine, as discussed above, allows admission of evidence obtained through a search untainted by an initial illegality, the inevitable discovery doctrine allows admission of evidence that *was* obtained illegally, so long as that evidence "would inevitably have been discovered" through independent and legal means. *Nix v. Williams*, 467 U.S. 431, 444, 448 (1984). In the government's view, the district court correctly concluded that CMPD would inevitably have discovered all the evidence it seized from Moore's apartment when the robbery unit conducted the second search, based on a search warrant that was

10

obtained without referring to evidence from the first. *See Moore*, 2022 WL 16579804, at *3.

That argument begs the question with which we started. The inevitable discovery doctrine salvages evidence obtained illegally only if the evidence would have been discovered "by *lawful* means" at a later point. *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017) (emphasis added). But whether the second, with-warrant search qualifies as "lawful means" is exactly the question Moore has put at issue: If the initial search was illegal (as we assume for these purposes) and it affected the robbery unit's decision to seek a search warrant (as Moore alleges), then the warrant was tainted by illegality and cannot support a finding of inevitable discovery "by lawful means." *Id.*; *see United States v. Thomas*, 955 F.2d 207, 211 (4th Cir. 1992) ("[T]he fact making discovery inevitable must arise from circumstances other than those disclosed by the illegal search itself." (internal quotation marks omitted)). Instead, we are right back where we started, in need of a determination by the district court as to whether the second, with-warrant search was fully independent of the first. *Hill*, 776 F.3d at 251.

In the alternative, the government ventures that the district court did, at least in effect, make the second finding required for application of the independent source doctrine: that the robbery unit's decision to seek a warrant for a second search was not affected by any information it learned as a result of the first search. The district court did not use "independent-source language" in making this purported finding, the government concedes. But the court got close enough, the government says, when it stated that the challenged evidence "would have been inevitably discovered during the lawful execution

11

of the search warrant." *Moore*, 2022 WL 16579804, at *3. We must respectfully disagree. It is not clear how we could read into that statement any finding regarding the officers' state of mind when they sought a search warrant for Moore's apartment. And even if we could, we would be left with the problem that Moore has alleged facts disputing the requisite state of mind – and yet the district court failed to hold an evidentiary hearing to assess the truth of those allegations. *See Bowman*, 106 F.4th at 300 (discussing circumstances under which an evidentiary hearing on a suppression motion is required).

In sum, Moore asserted facts putting at issue both the legality of the first search of his apartment and the impact of that search on the decision of the robbery unit to seek a warrant for the second search. The district court erred when it denied Moore's motion to suppress without holding the evidentiary hearing necessary to resolve at least one of those disputes in the government's favor, finding either that the first search was in fact legal or that the first search did not affect the officers' decision to seek a warrant for the second.

### III.

When a district court fails to hold an evidentiary hearing to make the requisite findings on a motion to suppress, the appropriate remedy is typically to remand with instructions to do so. *United States v. Campbell*, 945 F.2d 713, 716 (4th Cir. 1991); *Waller v. Georgia*, 467 U.S. 39, 49–50 (1984). We follow that course here.

We leave to the district court the order of operations. The district court may wish to begin by determining whether the initial search of Moore's apartment exceeded the scope of a lawful protective sweep, as Moore contends, or whether the arresting officers

12

did no more than what was authorized to protect their safety. If the initial search was lawful, then it would be unnecessary to consider the independent source and inevitable discovery exceptions to the exclusionary rule. Alternatively, the district court may elect to begin with an inquiry into whether the requirements of those doctrines were satisfied here, with respect to the items seized in each of the two searches and introduced at trial.[2] We of course express no judgment as to the ultimate outcome of these inquiries.

If the district court concludes that all of the challenged evidence was properly admitted at trial, then we will proceed to review that holding along with the remaining issues in Moore's appeal. If, instead, the district court concludes that any of the evidence should have been excluded from trial, then that court should determine the consequences of that decision for Moore's convictions.[3] This court will retain jurisdiction during the pendency of the remand proceedings. *Andrews*, 8 F.4th at 239.

*REMANDED WITH INSTRUCTIONS*

---

[2] In applying these doctrines on remand, it may be necessary to differentiate between the two sets of evidence at issue: evidence seized in the first search, at the time of Moore's arrest, and evidence seized in the second, when the robbery unit returned to Moore's apartment with a search warrant. In its order denying Moore's motion to suppress, the district court did not distinguish between the two or specify which evidence it was analyzing. The government's brief before the district court addressed only the items recovered from the first search, though Moore also moved to suppress the items recovered from the second. And Moore's brief on appeal does not separately address the two sets of evidence or clearly distinguish them. We trust that the district court will sort this out, as necessary, on remand.

[3] Neither party has addressed here whether, if any of the evidence were suppressed, it would be "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *United States v. Pratt*, 915 F.3d 266, 273 (4th Cir. 2019) (internal quotation marks omitted).

13